JOSEPH DENIS

*vs.*

LEWISTON, BRUNSWICK AND BATH STREET RAILWAY COMPANY.

JOSEPHINE DENIS *vs.* SAME.

Androscoggin.    Opinion February 26, 1908.

*Ways.   Travelers.   Teams.   Street Railways.   Public Street Junctions.   Negligence.
Husband and Wife.*

Those operating street cars and travelers with teams have equal rights on the
highway, and the rights of each class must be exercised with due regard to
the rights of the other, proper consideration being given to the difference
in motive power and to the fact that the cars run on a fixed track and
rapidly acquire a greater momentum.   All who have occasion to use the
highways whether by the old or new modes of travel are governed by the
same rule of reasonable use and reasonable care.

In view of the frequency with which teams in the ordinary course of travel
and traffic must pass across a street railway at public street junctions, the
motorman of a car when approaching such junctions is required to exercise
due care and vigilance, according to the exigencies of the situation, to have
his car under such control, in anticipation of the crossing of teams, that it
may be stopped at a junction in season to prevent collision with teams
that may suddenly turn to drive over the track.

While it cannot be declared as a matter of law that it is negligence per se for
a traveler to cross the tracks of a street railway without first looking and
listening for an approaching car, yet he is required to exercise all reason-
able and ordinary care, prudence and vigilance to avoid collision with a
car, and the exercise of this degree of care may impose upon him in many
situations the duty to look and listen for an approaching car before
attempting to cross the track.   He must do for his own safety and for the
safety of the passengers in a car, what ordinarily, careful and prudent
persons are accustomed to do under like circumstances.

Whether or not the failure of a traveler to look and listen, when about to
cross a street railway track, is to be deemed negligence, must be deter-
mined by all the facts and circumstances disclosed by the evidence.

It does not necessarily follow that a wife who is riding with her husband,
and who is herself in the exercise of reasonable care, is legally responsible
for the negligence of her husband as to acts over which she has no control

Where a wife was riding with her husband, who was an experienced and competent driver, along a street in which was a street railway, and the wife had nothing to do about driving the horse, and did not make any suggestions about the railroad track or the cars, and neither assumed nor felt any responsibility for the management and control of the team, but deferred entirely to the judgment and experience of her husband, and the team collided with a street car, the collision being caused in part by the contributory negligence of the husband, and the wife sustained personal injuries and brought suit against the street railway company to recover damages for such injuries and the verdict was for the wife, *held:* that the jury did not commit a manifest error in finding that the wife was not justly chargeable with culpable negligence for failing to look or listen for an approaching car or for any other acts of omission or commission on her part connected with the drive.

In the cases at bar, which were actions by a plaintiff husband and a plaintiff wife to recover damages for personal injuries sustained by them caused by the collision of their team, in which they were riding, with a street railway car and the verdict was for the plaintiff in each action, *held:* (1) That the defendant railway company was negligent in the management of its car. (2) That the plaintiff husband was guilty of contributory negligence, and that the verdict in his favor must be set aside. (3) That the plaintiff wife was not guilty of contributory negligence, and that the verdict in her favor, be sustained.

On motions by defendant. Sustained in first named action. Overruled in second named action.

Two actions on the case to recover damages for personal and property injuries sustained by the plaintiff Joseph Denis and for personal injuries sustained by the plaintiff Josephine Denis, caused by a collision of their team, in which they were riding, with a street car of the defendant company at the junction of Main and Pettengill streets in Lewiston. The plaintiffs are husband and wife.

Tried together at the September term, 1907, of the Supreme Judicial Court, Androscoggin County. Plea, the general issue in each action. Verdict for plaintiff husband for $299. Verdict for plaintiff wife for $550. The defendant then filed general motions to have the verdicts set aside.

The cases are fully stated in the opinion.

*Harry Mansur and Enoch Foster*, for plaintiffs.

*Wm. H. Newell*, for defendant.

SITTING : EMERY, C. J., WHITEHOUSE, STROUT, SAVAGE, SPEAR, CORNISH, JJ.

WHITEHOUSE, J.    The plaintiffs in these two actions are husband and wife, and each recovered a verdict for injuries received from a collision of their team with the defendant's car at the junctions of Main and Pettengill streets in Lewiston.    The two cases arose from the same state of facts and were tried together upon the same evidence.    They come to the Law Court on motions to have the verdicts set aside as against the evidence.

The following uncontroverted facts appeared in evidence.

The plaintiffs resided in Auburn, and on the evening of March 4, 1907, with their little daughter, six years of age, rode over to Main street in Lewiston with a horse and sleigh, to the house of Henry Brooks, situated on the south side of the street, arriving there soon after eight o'clock.    They remained there until about a quarter before nine when they started with their horse and sleigh to drive down Main street to Pettengill street for the purpose of calling at the house of Frank Brooks who lived on that street.

Opposite the residence of George Bearce is a curve in Main street, and for a distance of 72 rods from that curve down to the center of Pettengill street at its junction with Main, the railroad track, as well as the street runs in a straight line and on a descending grade of three per cent practically all the way.    The railroad track is located on the south side of Main street very near the sidewalk and across the mouth of Pettengill street, which enters, but does not intersect Main street.    The driveway just below the house of Henry Brooks, from which the plaintiffs started to drive down to Pettengill street, is 40 rods below the curve in Main street above mentioned, and 32 rods above the center of Pettengill street. There was a side track or turn-out 330 feet long opposite the house of Henry Brooks, and although it was not in use at that season of the year, the trolley and track switches remained in place.    The night was quite dark, but an electric arc light was located on the north side of Main street, opposite the mouth of Pettengill street, and was shining on the evening in question.    The section of Main

street mentioned is a residential portion of the city, and the street was illuminated to some extent by the artificial lights in the dwelling houses situated on both sides of the street.

On this line of railway the cars run from the head of Lisbon street up Main street two miles to the State Fair Grounds, and return, making the four miles in twenty minutes, including all stops and changes. It also appeared that a short time before the running schedule had been shortened from thirty minutes to twenty minutes.

When the plaintiffs left the house of Henry Brooks that evening as above stated, and went down Main street toward Pettengill street, the car was on its return trip from the Fair Grounds and went down behind the plaintiffs' team. Denis was driving down the street "not quite in the center" but nearer the railroad track, traveling at the rate of about six miles an hour, and when he had turned to go into Pettengill street, and the horse had passed substantially across the track, the defendant's car struck the team, threw out the occupants and carried them some distance beyond Pettengill street, causing the injuries complained of in the plaintiffs' writs.

1. It is alleged in the plaintiffs' declarations and contended in argument that the evidence warranted the jury in finding that at the time in question the defendant's car was negligently run at an unreasonable and dangerous rate of speed on the descending grade of Main street toward the junction with Pettengill street, and that due care was not exercised by the motorman to have his car under such control as it approached the junction that he would be able to stop it in season to avoid a collision with the plaintiffs' team in the event that the latter should be turned and driven across the track into Pettengill street.

It has been seen that the schedule time on this trip involved an average speed of twelve miles an hour. This rate was necessarily diminished somewhat in taking the trolley switch near the house of Henry Brooks, but the remaining distance of twenty-five rods from the lower end of the switch to Pettengill street was on a descending grade. When the plaintiffs came out of the driveway at the Brooks house onto the railroad track, their view was unobstructed

for a distance of 40 rods up to the curve in the street above mentioned, and they both testify that they looked up the track to see if the car was coming and that none was in sight at that time. Traveling at the rate of six miles an hour they only required one minute to traverse the distance of 32 rods to Pettengill street. But the team was overtaken by the car and if the latter had not reached the curve at the time the plaintiffs started, it must have run at the rate of about fourteen miles an hour in order to traverse the distance of 72 rods during the one minute required for the team to travel 32 rods.

The great momentum which the car had acquired when it reached the crossing, as shown by the distance covered by it after the collision, tends strongly to support the conclusion that it had attained a high rate of speed. The motorman states that he reversed the power when about thirty feet distant from the crossing, as soon as he saw the plaintiffs turn to cross the track, and the witnesses for the defense agree that this was the most effective means of stopping the car. Although there is a sharp conflict of testimony in regard to the exact distance traversed by the car after the collision, there was evidence which would have authorized the jury to find that the injured plaintiffs and the sleigh were carried by the car 110 feet beyond the crossing.

The motorman also admits that he saw the plaintiffs' team when the car was 25 rods distant from the crossing, and it is established by the weight of evidence that he immediately commenced sounding the gong to warn the driver of the plaintiffs' team. There is no evidence, however, that the speed of the car was slackened until the power was reversed thirty feet from the crossing. It is suggested on the part of the defense that the plaintiffs paid no attention to the sounding of the gong and gave no indication of their purpose to cross the track at Pettengill street, and hence that there was no occasion to moderate the speed of the car. But it is not in controversy that the street was so well lighted by the lights in the dwelling houses, the arc lights opposite the mouth of Pettengill street, and by the head light of the car that the team was plainly visible to the motorman, and the color of the horse distin-

guishable. The evidence warranted the jury in finding that by reason of the jingling of their sleigh bells the sound of the gong was not heard by the plaintiffs, and that by the exercise of reasonable care and vigilance the motorman might have drawn the inference from their conduct that the gong was not heard by them. In the exercise of due care he would have seen that they were driving along near the railroad in ignorance of the rapidly approaching car, and he should have considered that if they intended to cross the track at Pettengill street, they could not reasonably be expected to show any indication of their purpose until they arrived at a point so near the junction that with the speed at which the car was then running it would not be possible, with any agencies at his command, to stop it in season to prevent a collision if the team in fact attempted to cross.

The law governing the rights and duties of the proprietors of street railways and travelers with ordinary teams in their relations to each other has been so critically examined and fully considered, both upon reason and authority, in the recent decisions of this court, that no extended discussion of the rules applicable to the case at bar is here required. *Flewelling* v. *Railroad,* 89 Maine, 585; *Atwood* v. *Railway Co.,* 91 Maine, 399; *Fairbanks* v. *Railway Co.,* 95 Maine, 78; *Warren* v. *Railway Co.,* 95 Maine, 115; *Robinson* v. *Street Railway,* 99 Maine, 47; *Butler* v. *Street Railway,* 99 Maine, 149; *Marden* v. *Street Railway,* 100 Maine, 41.

According to the well settled law of this State those operating street cars and travelers with teams have equal rights on the highway, and the rights of each class must be exercised with due regard to the rights of the other, proper consideration being given to the difference in motive power and to the fact that the cars must run on a fixed track and rapidly acquire a greater momentum. All who have occasion to use the highways, whether by the old or new modes of travel, are governed by the same rule of reasonable use and reasonable care. But a distinction is recognized, both by reason and authority between the degree of caution and vigilance to be exercised by street cars while running along the street between

the crossings, and that required when approaching such crossings. It is now held with a substantial unanimity of judicial opinion that in view of the frequency with which teams in the ordinary course of travel and traffic must pass across the railway at public street junctions, the motorman of a car when approaching these junctions is required to exercise due care and vigilance, according to the exigencies of the situation, to · have his car under such control, in anticipation of the crossing of teams, that it may be stopped at the junction in season to prevent a collision with teams that may suddenly turn to drive over the track. *Marden* v. *Street Railway*, 100 Maine, 41, and cases cited.

In the case at bar the jury must have reached the conclusion that the defendant's servants in charge of the car at the time in question, failed to exercise that degree of vigilance and precaution in slackening the speed of the car and keeping it under control, that the plain exigencies of the situation required; and after a patient study of the physical situation and the conduct of the parties, this court does not feel warranted in saying that the finding of the jury was so manifestly wrong that it must be set aside.

2.   But the plaintiffs were not entitled to recover simply upon proof of defendant's negligence.   It was incumbent upon them to go further and show that there was no want of ordinary care on their own part which contributed as a proximate cause of the injury.

The jury must have found that the plaintiffs were not guilty of any negligence in the management of the team, but in the opinion of the court this finding of the jury was unmistakably wrong as to the plaintiff Joseph Denis.

It is true that the established rule respecting steam railroads that it is negligence per se for a person to cross the track without first looking and listening for a coming train, has been repeatedly held by this court to be inapplicable to the crossing of the tracks of a street railway in a public street where the cars do not enjoy the exclusive right of way.   It cannot be declared as a matter of law that it is negligence per se for a traveler to cross the tracks of a street railway without first looking and listening for an approaching

car.   But before crossing a street railway the traveler is required to exercise all reasonable and ordinary care, prudence and vigilance to avoid a collision with a street car, and in exercising this degree of care he may be required as a matter of fact in many situations, to look and listen for an approaching car before attempting to cross the track.   He must do for his own safety and for the safety of the passengers in the car, what ordinarily, careful, thoughtful and prudent persons are accustomed to do under like circumstances. Whether his failure to look and listen before crossing is to be deemed negligence must be determined upon all the facts and circumstances disclosed by the evidence.   *Fairbanks* v. *Railway Co.*, 95 Maine, 78 ;   *Warren* v. *Railway Co.*, 95 Maine, 115 ;   *Butler* v. *Street Railway*, 99 Maine, 149 ;   *Marden* v. *Street Railway*, 100 Maine, 41.

The plaintiff Joseph Denis had previously lived on Pettengill street and for years had been familiar with the running of the cars on Main street and, as he admits in his testimony, "knew they were liable to go back and forth at any time."   He appears to have apprehended that a car might be approaching at the time he came out of the driveway of Henry Brooks, for he states that before crossing the track there, he looked up the street to see if a car was coming and discovered none.   But he must have known that the speed of a car between the street crossings on such descending grade, would probably be more than twice that of his team, and that he was liable to be overtaken by it before reaching Pettengill street. He should have considered that the jingling of his sleigh bells was liable to prevent him from hearing the sound of the gong and other noises of an approaching car.   But the car must have come around the curve 40 rods above the Brooks house within a few seconds after the plaintiff started down the street.   If he had stopped his team and listened, the sound of the approaching car must have been heard by him.   If he had turned his head and glanced up the track the head light of the rapidly approaching car would have appeared to his unobstructed vision.   He did neither of these things, but with an absence of caution and freedom from anxiety difficult to explain or comprehend, he drove down to Pettengill street and without stop-

ping to listen or turning to look, he deliberately attempted to cross the track. True, he says he was looking ahead thinking it more probable that a car might be coming up the track, but seeing none ahead of him, he might reasonably have apprehended the approach of one behind him. Did he do for his own safety, the safety of his wife and child and the passengers on the car, all that ordinarily prudent travelers usually do under like circumstances? It is the opinion of the court that in this respect there was a failure of duty on his part and that he must be deemed guilty of contributory negligence.

3. But the contributory negligence of the injured party that will prevent a recovery must have contributed as a proximate cause of the injury. *Atwood* v. *Railway Co.*, 91 Maine, 405. The plaintiff may have been negligent and his negligence may have afforded an occasion or opportunity for an injury which · is caused by a defendant's subsequent and independent negligence, but such negligence on the part of a plaintiff will not prevent a recovery. *Ward* v. *Railroad Co.*, 96 Maine, 145.

But the facts in this case are materially different from those in the last named cases, and the rule there applied is not applicable here. In each of those cases, the plaintiff as the result of his own prior negligence, was in a passive condition of peril as obvious to the defendant's servants as that of a person lying on the track unconscious from intoxication or sleep. By the exercise of ordinary vigilance and precaution, the defendant in those cases might have avoided the collision, and its failure to exercise such precaution was deemed the proximate cause of the injury, for the reason that it was negligence subsequent to that of the plaintiff, and independent of it.

In the case at bar the defendant's negligence cannot be deemed subsequent to and independent of the plaintiff's contributory negligence, and the doctrine of prior and subsequent negligences does not apply. The defendant's negligence was contemporaneous and concurrent with the plaintiffs and not subsequent to it. The plaintiff's negligence actively continued from its commencement to the moment of the collision. The situation was analogous to that in

*Butler* v. *Street Railway*, 99 Maine, 160. As stated by the court in that case, the defendant's negligence "operated to produce the result in connection with the plaintiff's negligence and not independently of it; the plaintiff's negligence was operative to the last moment and contributed to the injury as a proximate cause."

The verdict in favor of Joseph Denis was not authorized by the evidence and must therefore be set aside.

4. It is contended in behalf of the defendant that the verdict in favor of the wife Josephine Denis, should also be set aside, not because the negligence of her husband was legally imputable to her, for the doctrine of imputable negligence was expressly rejected by this court in *State* v. *B. & M. Railroad*, 80 Maine, 430; but for the alleged reason that she herself was guilty of negligence which contributed as a proximate cause of the injury. But as observed by this court in *Whitman* v. *Fisher*, 98 Maine, 577, "it does not by any means necessarily follow that a wife who is riding with her husband, and who is herself in the exercise of reasonable care, is legally responsible for the negligence of her husband as to acts over which she has no control." *Shultz* v. *Old Colony Street Railway Co.*, 193 Mass. 309. Joseph Denis, the driver of the team, was a man 37 years old, who was familiar with the running of the cars over this route. He owned the team which he was driving, and it is not questioned that he was an experienced and competent driver. The wife testifies that she had nothing to do about driving the horse, she was "afraid"; and that she didn't tell her husband anything about driving the horse, or make any suggestions about the railroad track or the cars. It is true that she looked up the track when they started from the Brooks house, presumably on account of some remark of her husband, but it satisfactorily appears from all of the evidence that she neither assumed nor felt any responsibility for the management and control of the team, but deferred entirely to the judgment and experience of her husband. She appears to have been a woman in feeble condition, this being the first time she had been out of doors since the birth of her last child a month before. She and her husband occupied the whole of the seat in the sleigh and the little girl six years old sat on her parents' knees, her mother holding her cape over her to protect her from the cold.

Upon consideration, therefore, of all the facts and circumstances, it is the opinion of the court that the jury did not commit a manifest error in finding that the plaintiff, Josephine Denis, was not justly chargeable with culpable negligence for failing to look or listen for an approaching car or for any other acts of omission or commisson on her part connected with the drive that evening.

The entries must accordingly be as follows :

In the case of Joseph Denis,

*Motion for new trial sustained.*

In the case of Josephine Denis,

*Motion for a new trial overruled.*