[No. 7767. Decided April 12, 1909.]

ETTA WILSON, *Respondent,* v. PUGET SOUND ELECTRIC RAILWAY, *Appellant.*[1]

CARRIERS — CONTRIBUTORY NEGLIGENCE — AUTOMOBILES — IMPUTED NEGLIGENCE. The negligence of the driver of an automobile for hire is not imputable to a passenger.

SAME—NEGLIGENCE OF PASSENGER IN AUTOMOBILE. A passenger in an automobile for hire, riding beside the driver, is not guilty of contributory negligence in not warning, advising, or directing the driver in cases of emergency, or in not attempting to control the acts of the driver in passing other cars.

STREET RAILWAYS—NEGLIGENCE—EXCEEDING SPEED LIMIT. It is negligence *per se* for a street car to exceed the speed limit.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 18, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action for the death of plaintiff's husband killed in a collision of a street car and an automobile. Affirmed.

*James B. Howe* and *Hugh A. Tait,* for appellant, contended, among other things, that it has been held that negligence of the driver of a private vehicle is in all cases imputable to the passengers in such vehicle. *Evensen v. Lexington etc. R. Co.,* 187 Mass. 77, 72 N. E. 355; *Yarnold v. Bowers,* 186 Mass. 396, 71 N. E. 799; *Kane v. Boston Elevated R. Co.,* 192 Mass. 386, 78 N. E. 485; *Dryden v. Pennsylvania R. Co.,* 211 Pa. 620, 61 Atl. 249; *Lightfoot v. Winnebago Traction Co.,* 123 Wis. 479, 102 N. W. 30; *Ritger v. Milwaukee,* 99 Wis. 190, 74 N. W. 815, 28 Am.

[1]Reported in 101 Pac. 50.

Rep. 558; *Mullen v. Owasso*, 100 Mich. 103, 58 N. W. 663, 43 Am. St. 436, 23 L. R. A. 693; *Omaha etc. R. Co. v. Talbott*, 48 Neb. 627, 67 N. W. 599; *Payne v. C. R. I. & P. R. Co.*, 39 Iowa 523; *Slater v. Burlington etc. R. Co.*, 71 Iowa 209, 32 N. W. 264; *Crampton v. Ivie Bros.*, 126 N. C. 894, 36 S. E. 351; *Whittaker v. Helena*, 14 Mont. 124, 35 Pac. 904, 43 Am. St. 621. While perhaps the greater weight of authority is to the contrary, still it is incumbent upon a passenger of a private vehicle to use ordinary care to protect himself from apparent danger. *Cable v. Spokane & Inland Empire R. Co.*, 51 Wash. 619, 97 Pac. 744; *Colorado etc. R. Co. v. Thomas*, 33 Colo. 517, 81 Pac. 801, 70 L. R. A. 681; *Brannen v. Kokomo etc. Gravel Road Co.*, 115 Ind. 115, 17 N. E. 202, 7 Am. St. 411; *Cincinnati etc. R. Co. v. Howard*, 124 Ind. 280, 24 N. E. 892, 19 Am. St. 96, 8 L. R. A. 593; *Miller v. Louisville etc. R. Co.*, 128 Ind. 97, 27 N. E. 339, 25 Am. St. 416; *City of Vincennes v. Thuis*, 28 Ind. App. 523, 63 N. E. 315; *Willfong v. Omaha etc. R. Co.*, 116 Iowa 548, 90 N. W. 358; *Bush v. Union Pac. R. Co.*, 62 Kan. 709, 64 Pac. 624; *Missouri etc. R. Co. v. Bussey*, 66 Kan. 735, 71 Pac. 261; *Louisville & N. R. Co. v. Molloy's Adm'x*, 28 Ky. Law 1113, 91 S. W. 685; *State v. Boston & M. R. Co.*, 80 Me. 430, 15 Atl. 36; *Smith v. Maine Cent. R. Co.*, 87 Me. 339, 32 Atl. 967; *Allyn v. Boston etc. R. Co.*, 105 Mass. 77; *Kane v. Boston Elevated R. Co.*, supra, and cases cited; *Cunningham v. Thief River Falls*, 84 Minn. 21, 86 N. W. 763; *Illinois Cent. R. Co. v. McLeod*, 78 Miss. 334, 29 South. 76, 84 Am. St. 630, 52 L. R. A. 954; *Holden v. Missouri R. Co.*, 177 Mo. 456, 76 S. W. 973; *Fechley v. Springfield Traction Co.*, 119 Mo. App. 358, 96 S. W. 421; *Hajsek v. Chicago etc. R. Co.*, 5 Neb. (Unof.) 67, 97 N. W. 327; *Brickell v. New York Cent. etc. R. Co.*, 120 N. Y. 290, 24 N. E. 449, 17 Am. St. 648; *Anderson v. Metropolitan St. R. Co.*, 30 Misc. 104, 61 N. Y. Supp. 899; *Toledo etc. R. Co. v. Eatherton*, 11 Ohio Dec. 253; *Carr v. Easton*, 142 Pa. St. 139, 21 Atl. 822; *O'Toole v. Pittsburgh etc. R. Co.*, 158 Pa.

St. 99, 27 Atl. 737, 38 Am. St. 830, 22 L. R. A. 606; *Dryden v. Pennsylvania R. Co.*, *supra*; *Davis v. Chicago etc. R. Co.*, 159 Fed. 10, and numerous cases cited.

*Blaine, Tucker & Hyland* and *Robert C. Saunders*, for respondent.

Gose, J.—The respondent, plaintiff below, brought this suit against the appellant, to recover damages for personal injuries received by her husband, resulting in his death. The case was tried to a jury, terminating in a verdict and judgment against the appellant. From such judgment this appeal is prosecuted.

The complaint, in substance, charges, that on the 14th day of September, 1907, the respondent's husband became a passenger in an automobile, run for hire, and was being conveyed therein from the city of Seattle to a point known as "The Meadows," some distance south of the city; that a car of the appellant, operated by electricity, through the negligence of the appellant's servants, ran into the automobile, overthrowing the same, and throwing the husband of the respondent out of the automobile, and upon the planking in the street at the point of contact, with such force and violence as to produce injuries from which he died on the 27th day of October, following. The appellant joined issue upon the question of its negligence, and pleaded affirmatively that the negligence of the respondent's husband contributed to his injury and was the proximate cause thereof. This was denied by the reply.

The undisputed evidence showed that the accident occurred on a planked street known as First Avenue South. The street at this point was about thirty-six feet in width. On either side of the street was a walk for pedestrians, about four feet in width. On the outside of each walk there was a railing about three feet in height, and on the inside a riser, about eight inches square, was spiked to the plank. This riser was the only barrier between the street and the

walk.   The appellant was operating a double tracked electric
railway over the street.   The street was used generally by the
public.   There was not sufficient space for an ordinary vehicle
to pass between cars on the tracks, or to pass between a car
and the barrier.   The street was practically level and straight
for a fourth to a half a mile south from the point where the
accident occurred.

On the day of the accident, a friend of the deceased invited
him and others to go to The Meadows, and procured an au-
tomobile which was operated for hire to convey them thither.
The route taken by the automobile was south along what is
known as First Avenue South, the narrow planked street here-
tofore mentioned.   The deceased sat on the front seat beside
the driver.   The machine followed the street car for some dis-
tance, when, owing to the dust and splinters thrown up by
the car, the driver turned the machine on to the east track,
and ran parallel with the car for about one-fourth of a mile.
The outgoing car took the west track, and the incoming car
the east track.   When running parallel with the car, the ma-
chine ran along the east track.

There was a sharp conflict in the evidence as to the speed
at which the machine and car were running.   It was variously
estimated by the witnesses at from eight to forty miles an
hour.   The driver of the machine, who was also its owner,
testified that, before turning on to the east track, he asked
the deceased "if the road was clear,   .   .   .   and he looked
over and said it was; that there was not a car or anything in
sight;" and he further said:   "I could also see that it was;
that there was nothing there in sight anywhere that I could
see, and I drew out."   He further said, that he ran along-
side the car for a fourth of a mile; that he then saw the north-
bound car approaching him about 300 or 350 yards distant;
that he could have seen the north-bound car a fourth of a
mile; that he was then thirty feet in the lead of the south-
bound car; that upon seeing the approaching car, he in-
creased the speed of the machine about twenty per cent, and

took a diagonal course about 150 feet; that he was then running in front of the south-bound car, about fifteen to twenty-five feet in advance of it; that he ran on that track "a little distance" before he was struck; that he increased his speed and ran in front of the south-bound car because he did not think that he had time to drop behind it and avoid a collision with the north-bound car; that the north-bound car passed before his machine was struck by the south-bound car; that his machine was carried eighty feet by the car.

It is conceded that the speed limit was twelve miles an hour. A passenger in the machine testified, that the south-bound car was running thirty-five miles an hour; that the north-bound car was running about thirty miles an hour; that when the driver started to turn in front of the south-bound car, the north-bound car was about 300 yards distant; that the driver turned in twelve or fifteen feet ahead of the north-bound car; that the machine was fully straightened out in front of the car before it was struck; that the north-bound car could have been seen for a distance of a half mile. A witness on the south-bound car testified, that the car was running very fast; that the car carried the machine sixty yards after striking it. Another witness said, the car ran seventy-five or one hundred yards after striking the machine; that the machine got in the car track fifteen or twenty feet in front of the car. Still another witness said: "When I saw him (the driver) he was straightened out, and then the street car came on him so fast that it just crashed right into him;" that the machine was traveling at the rate of twenty miles an hour, and the car at the rate of thirty miles an hour; that the car ran one hundred or one hundred and fifty feet after it turned the machine over; that it dragged the machine two hundred feet, and carried it some thirty feet before the machine turned over. A witness for the appellant said the car "stopped in about one hundred to one hundred and twenty-five feet from where the automobile had stopped and turned over."

The appellant offered evidence tending to show, that the

car was running at from eight to twenty-five miles an hour; that the machine turned in front of the car on a sharp curve from two to thirty-five feet ahead of the car; that the machine ran against the riser or guard rail, slackened speed, and was then struck by the car. The only evidence as to anything the deceased said or did was that, in response to an inquiry of the driver as to whether the north-bound track was clear, "he looked over and said that it was  .  .  . that there was not a car or anything in sight." The only instruction given the driver was the statement of one Van De Vanter, who hired him, to the effect that the party wanted to go to The Meadows, and that they had "plenty" of time. Under all the evidence, the east track was clear when the machine took it. Assuming that the north-bound car could have been seen for half a mile if it was traveling at the same speed as the machine, it was not in sight when deceased looked. As we have said, the machine ran on the east track for a quarter of a mile, and then the north-bound car was from 300 to 350 yards distant.

Three errors are assigned: (1) That the court erred in denying appellant's motion for judgment at the close of the evidence; (2) that the court erred in refusing to direct a verdict for the appellant; (3) that the court erred in denying appellant's motion for a verdict notwithstanding the verdict. In legal effect the three assignments challenged the sufficiency of the evidence to support the verdict. The appellant argues (1) that the respondent's decedent was guilty of contributory negligence which precluded her recovery. Under this head it urges: (1) the chauffeur was grossly negligent; (2) under the circumstances the negligence of the chauffeur was imputable to respondent's decedent; and (3) that the evidence does not disclose any negligence on the part of the appellant. Whether the chauffeur was negligent we will not consider, except as it may appear to touch the question of the independent negligence of the deceased. The doctrine of imputable negligence has been rejected by this court.

"Where one is simply an invited guest of a voluntary driver, we do not believe the latter should be held to be such an agent of the former that the driver's negligence should be imputed to the passenger, when the passenger is without fault, and has no control over the driver or his team. Especially does this seem to be right when considered in relation to one innocent of negligence, where it appears that the accident would not have happened, even with the negligence of the driver contributing, but for the primary neglect of the defendant." *Shearer v. Buckley*, 31 Wash. 370, 72 Pac. 76. We are content with the rule announced in this case. The question of imputable negligence was not pressed in the oral argument.

Touching the question of contributory negligence of the deceased, the general rule has been announced by this court in *Shearer v. Buckley, supra,* at page 376, where it said:

"Whether he was negligent and contributed to the injury was a question concerning which the minds of men might reasonably differ, and was for the jury to determine. *McQuillan v. Seattle*, 10 Wash. 464, 38 Pac. 1119, 45 Am. St. Rep. 799; *Steele v. Northern Pacific Ry. Co.*, 21 Wash. 287, 57 Pac. 820; *Traver v. Spokane St. Ry. Co.*, 25 Wash. 225, 65 Pac. 284; *Jordan v. Seattle*, 26 Wash. 61, 66 Pac. 114; *Burian v. Seattle Electric Co.*, 26 Wash. 606, 67 Pac. 214."

The appellant urges, however, that there was an advisory or supervisory duty on the deceased, under the rule announced in *Cable v. Spokane & Inland Empire R. Co.*, 50 Wash. 619, 97 Pac. 744. In this case Rufus Cable received injuries from which he died, and his daughter, a young woman seventeen years of age, was seriously injured. The injury occurred at a crossing of an interurban electric railway. The father and daughter were attempting to cross the track with a horse and buggy. The doctrine of "stop, look and listen" was applied to both father and daughter. It appears from the opinion that the father was driving the horse. We think the true general rule is announced in this case in the following language:

"Ordinarily where one rides in a vehicle with the driver thereof and is injured by the negligence of a third person, to which negligence that of the driver contributes, this contributory negligence is not imputable to the passenger, unless said passenger has, or is in a position to have and exercise, some control over the driver with reference to the matter wherein he was negligent."

We think that it may be stated with the utmost safety that ordinarily two persons cannot drive or control the same horse, team, or vehicle, at the same time. But however the rule may be as to the duty of one who is not the driver, when riding in a conveyance drawn by horses, the reason for the rule has no application to the instant case. No negligent act of the deceased, either of omission or commission, is disclosed by the evidence. He did nothing and said nothing except to answer a question asked him by the driver. It is a well known fact that an automobile is an intricate machine and one which requires skill to operate. The deceased had a right to assume that the driver was competent, that he knew the capacity of his machine, and that he would not put it in a perilous position. If the machine was running at twelve or fifteen miles an hour, as testified by the driver, and the car at eight miles an hour, as testified by the motorman, when the driver started to go on to the west track, the act would not have appeared hazardous to a reasonable man. If, however, the south-bound car was traveling at a speed of forty miles an hour, and the north-bound car at thirty miles an hour, the situation was serious when the north-bound car was observed, and it would not appear to one who is not skilled in the operation of a machine how any advice from a passenger to the driver under such circumstances could aid the latter in any way. It would seem that any interference, or attempted assistance, on the part of the passenger would have tended to disconcert rather than to aid the driver. The facts are, therefore, distinguishable from those in the *Cable* case.

A case very similar to this is *Chadbourne v. Springfield St.*

34—52 WASH.

*R. Co.* (Mass.), 85 N. E. 737. In that case the plaintiff was riding as the invited guest of the driver of an automobile on a narrow bridge. Two street car tracks crossed the bridge in the center of the roadway, so that a vehicle could not pass between the car on either track and the guard rail of the bridge. The driver of the automobile, after following the car for a distance, turned to pass it on the left, it being impossible to pass it on the right. The machine was struck by the approaching car. At page 738 the court say:

"The question of the plaintiff's due care was for the jury. She seems to have conducted herself as an invited guest of the driver of an automobile or other vehicle naturally would do. She trusted him as to the running of the machine; that is, she did not attempt to interfere with his management of the automobile. In view of her inexperience and of what might have been found to be the skill and experience of the driver, the jury might well have thought that this was a wise course on her part. Nor was there any relation of agency between her and the driver such as of itself would affect her with negligence on his part. She had no right to control him. There was no mutuality in a common enterprise between them. It cannot be said as matter of law that she ought to have warned the driver against turning out from behind the car which he had been following, especially in view of the fact that he was turning both in the direction required by statute (Rev. Laws, c. 54, § 2), and in the only direction in which the width of the bridge afforded room for him to pass that car. And she had a right to rely somewhat on the acquaintance with the road which she might presume that he had. Accordingly we need not consider whether it can be said that Reed's conduct was, as a matter of law, negligent. Even if this were so, the plaintiff's own due care was for the jury."

Speaking to this question in *State v. Boston etc. R. Co.*, 80 Me. 430, 15 Atl. 36, it is said:

"The plaintiff's case is fortified by another consideration. He neither drove, nor, as far as appears, had any control of the team on which he was riding. It is reasonable to suppose that the owner carried him either for hire or gratuitously as a neighborly kindness. His position was not of the same degree of responsibility to the railroad as was that of the driver.

He was a comparatively passive party. Not that he had no duty to perform. He could have asked the driver to stop the team, or he could have left it. But it would be natural, even though his fears were excited, that he should defer to some extent to the experience and discretion of the driver who was in the control of his own team; and before he had time to assert his own judgment against the driver's, or perhaps fully appreciate the situation, the inevitable event was upon him. We think this fact has considerable force in the combination of circumstances which weigh against the charge of contributory negligence."

In *Louisville & N. R. Co. v. Molloy's Adm'x.*, 28 Ky. Law 1113, 91 S. W. 685, one Molloy hired one Oller, a liveryman, to take him to Brownsville with a team. Molloy was killed while the team was crossing a railroad track. At page 687 the court said:

"Oller was a common carrier of passengers, and Molloy was no more chargeable with his negligence than he would have been for the negligence of the motorman if riding on an electric car."

In *Carr v. Easton*, 142 Pa. St. 139, 21 Atl. 822, a woman was injured by the upsetting of a sleigh in which she was riding, caused by high embankments of snow and ice and by gutters on the track. At pages 143, 144 it is said:

"She was a woman, not shown to have any special knowledge of driving or horses or sleighs, who had trusted herself to the guidance of her brother-in-law and his friend; and we cannot say, as matter of law, that the danger was so apparent or so serious that she was called upon to exercise her own judgment in opposition to theirs. All these matters are for the jury to decide, upon their view of reasonable care and prudent conduct, under the circumstances shown by the evidence."

See, also, *Louisville etc. R. Co. v. Creek*, 130 Ind. 139, 29 N. E. 481, 14 L. R. A. 733; *Board of Com'rs of Boone County v. Mutchler*, 137 Ind. 140, 36 N. E. 534; *Lake Shore etc. R. Co. v. McIntosh*, 140 Ind. 261, 38 N. E. 476; *Cunningham v. Thief River Falls*, 84 Minn. 21, 86 N. W.

763; *Denis v. Lewiston etc. R. Co.* (Me.), 70 Atl. 1047; *Roedler v. Chicago etc. R. Co.*, 129 Wis. 270, 109 N. W. 88; *Galveston etc. R. Co. v. Kutac*, 72 Texas 643, 11 S. W. 127.

The applicable rule was very clearly stated to the jury by the learned trial judge in the following terms:

"Now, briefly, you are to understand from these general charges that the husband of the plaintiff would not be liable for the negligence of the automobile driver if there was any, unless by his own failure to exercise ordinary care at the time he contributed to his injury by doing or failing to do something that he ought to have done or should not have done at the time as an ordinarily prudent person."

It would certainly be an extreme case where the court would be warranted in announcing, as a rule of law, that a passenger in an automobile was required to warn, advise, or direct its driver, or to apply to such passenger the doctrine of "stop, look and listen." We are impressed with the statement of the learned counsel of the respondent, that ordinarily the only obligation on such passenger is to "sit tight."

There is abundant evidence tending to show that the appellant was running at a dangerous speed, much in excess of the speed limit prescribed by ordinance. Speaking upon this question, we said, in *Engelker v. Seattle Elec. Co.*, 50 Wash. 196, 96 Pac. 1039:

"To the doctrine that exceeding the lawful speed limit constitutes negligence, this court has already subscribed in the *Traver* case [*Traver v. Spokane Street R. Co.*, 25 Wash. 225, 65 Pac. 284]. . . . We prefer to adhere to the doctrine that a thing which is done in violation of positive law is in itself negligence."

We have no difficulty in arriving at the conclusion that there was abundant evidence to be submitted to the jury upon all the questions raised by the appellant. The verdict being for $2,500 was singularly modest, and the judgment will be affirmed.

Fullerton, Dunbar, Mount, Crow, and Chadwick, JJ., concur.