[No. 16446. Department Two. August 11, 1921.]

FRANK MASTERSON, *by his Guardian ad Litem, D. L. Masterson, Appellant,* v. MRS. JAMES LEONARD *et al., Respondents.*

D. L. MASTERSON, *Appellant,* v. MRS. JAMES LEONARD *et al., Respondents.*[1]

NEGLIGENCE (23) — IMPUTED NEGLIGENCE — RIDER OF BICYCLE. Where two boys engaged in the joint enterprise of covering a news-paper route which belonged to one of them, but in which he was sometimes assisted by the other, were both riding the same bicycle, the owner on the cross-bar and his friend in the seat and controlling its guidance, the negligence of the latter in colliding with an automobile while coasting down a street is attributable to the other.

TRIAL (99) — INSTRUCTIONS — REQUESTS FOR SPECIFIC INSTRUCTIONS. An instruction that the plaintiff must prove that "the defendant was negligent as charged in this complaint," should not be deemed erroneous, in view of the fact that all acts of negligence were pleaded in one paragraph, and there were no requested instructions asking specific charges upon the different acts of negligence, viewed separately.

Appeal from judgments of the superior court for Spokane county, Frater, J., entered August 10, 1920, upon verdicts rendered in favor of the defendants, in actions for personal injuries sustained in a collision with an automobile. Affirmed.

*E. A. Cornelius,* for appellants.

*Lee & Kimball,* for respondents.

PARKER, C. J.—These two actions, though separately commenced and finally disposed of in the superior court by separate verdicts and judgments, were, by agreement of all parties, tried together. The plaintiff Frank Masterson, by his guardian *ad litem,* seeks re-

[1]Reported in 200 Pac. 320.

covery of damages claimed as the result of personal injuries suffered by him from the alleged negligent operation of an automobile by the defendants. The plaintiff D. L. Masterson, father of the plaintiff Frank Masterson, seeks recovery of damages claimed as the result of the same alleged negligence on the part of the defendants; which claimed damages are for medical and hospital expenses incurred by him for his son's care, rendered necessary by the injuries received by the son. The trial resulted in verdicts and judgments in favor of the defendants, denying recovery to both of the plaintiffs, from which they have appealed to this court.

The plaintiff Frank Masterson and his companion, Edward Buck, who was with him at the time of the accident, were at the time each twelve years old. They were ordinarily bright and intelligent boys of that age, and were possessed of such experience in the city life of Spokane — wherein the accident happened — as newspaper boys ordinarily possess, and were well acquainted with the conditions of the streets at and in the immediate neighborhood of the accident. Frank was injured in being thrown from a bicycle, on the frame of which he was riding just behind the handle bars, Edward sitting on the seat of the bicycle, having hold of the handles and controlling it in the usual manner, save for the fact that he had to reach his arms past Frank, on each side, to the handles. Riding in this manner, the boys coasted west for a distance of two blocks down 5th avenue, on a descending grade averaging about nine per cent, and, when arriving at the foot of the grade at the intersection of Walnut street, were thrown from the bicycle, either by coming into collision with the defendants' automobile, which was at that moment crossing 5th avenue going south

on Walnut street, or by being thrown from the bicycle in an effort ' on the part of Edward to avoid the collision with the automobile. Frank was quite severely, though apparently not permanently, injured; Edward escaped with but slight injury. The bicycle belonged to Frank's father, but Frank had been riding it for about a year, and he then had it in his possession with the privilege of using it. All of these facts are undisputed.

In view of the question of the negligence of Edward being imputed to Frank and thus making such negligence Frank's contributory negligence, presently to be considered, it is necessary that we have a correct view of the evidence touching the relationship of the boys to each other in their undertaking of this hazardous journey in the manner above noticed. Edward testified for the plaintiffs as follows:

"Q. You were with the Masterson boy the day of the collision? A. Yes. Q. Where did you come from on that day? A. From our house. Q. Where is your home? A. On Fifth avenue, between Jefferson and Adams. Q. And what direction from the place of the collision? A. East. Q. How far away? A. Two blocks and a half. Q. What direction were you going to reach this avenue and Walnut? A. West. Q. Just state when—what you did from the time you left until the collision? A. We went up the hill together and there is a little hill in front of our house that goes up to Fifth and Adams—we started at our house and went to Fifth and Adams, it is about a half a block uphill, we walked up there and we decided to ride Frank down the hill and he got on the cross bar and I got on the saddle and we started down the hill, there are two hills, we came to the bottom of the first hill, and there was an old lady crossing the road and we slowed up for her, and then coasted on down to where we bumped into the automobile. . . . Q. Where were you going from there? A. For the

papers. . . . Q. Whose paper route is that? A. It is mine. Q. Why was Frank going along? A. He was going to substitute on my route if I was sick. Q. He had been over the route with you before that? A. Yes. Q. How many times? A. He used to go off and on. Q. And you always got the papers at the same place? A. Yes. Q. You always went over then in the same way on bicycle? A. Yes. Q. Did you have a bicycle? A. Yes. Q. Did Frank have a bicycle? A. Yes. Q. Whose were you using this night? A. It was Frank's. . . . Q. Now you went up to the top of the hill of Adams and Fifth avenue, and you said something to him about whether he could ride you or you ride him? A. Yes. Q. And it finally run to your lot to run the bicycle? A. Yes, sir. Q. Now you got on the saddle and he got on the cross-bars, which way did his feet point, which way did he face? A. To the left. . . . Q. Now you say you went on down here to Walnut, coasting all the way down, were you? A. Yes. Q. Frank was sitting in front of you and your arms on either side of him, and you had hold of both handlebars . . . A. Yes, sir."

This testimony is all of the evidence having any substantial bearing upon the relationship of the boys to each other in their then enterprise or adventure. While Frank testified in the case, his testimony was not in the least in conflict with the facts disclosed by the above quoted testimony of Edward, and there is no other testimony or circumstance in the case which in the slightest degree points to the relation of the boys to each other, or their purpose in coasting down 5th avenue upon the bicycle.

It is contended that the trial court erred in giving its instructions to the jury, in assuming, as claimed by counsel for appellants, that whatever negligence Edward was guilty of in the control of the bicycle was

imputable to and became the negligence of Frank, and thus became Frank's contributory negligence. We assume, for argument's sake, that the instructions given by the trial judge in effect so decided this question as one of law; that is, that Edward's negligence in the management of the bicycle became by imputation, as a matter of law, Frank's contributory negligence; clearly leaving to the jury, however, the question of whether or not Edward was negligent. In support of this contention, counsel cite and particularly rely upon our decisions in *Wilson v. Puget Sound Elec. R. Co.,* 52 Wash. 522, 101 Pac. 50, 132 Am. St. 1044, and *Allen v. Walla Walla Valley R. Co.,* 96 Wash. 397, 165 Pac. 99. The *Wilson* case involved injury resulting in the death of a passenger who was being carried in an automobile for hire. The *Allen* case involved an injury to a guest or companion riding in a buggy, who apparently had no control whatever over the driving of the buggy; nor did it appear that the driver and the injured person were engaged in any common enterprise. Judge Webster, speaking for the court, said in part:

"The basic thought upon which the doctrine or principle of imputed negligence rests is that the relationship of master and servant or principal and agent must exist between the driver and the occupant at the time of the injury. In the absence of such a relationship, the negligence of the one will not be attributed to the other."

Counsel for appellants also cite in support of their contention, but without comment thereon, the following decisions of this court: *Brabon v. Seattle,* 29 Wash. 6, 69 Pac. 365; *Shearer v. Buckley,* 31 Wash. 370, 72 Pac. 76; *Cathey v. Seattle Elec. Co.,* 58 Wash. 176, 108 Pac. 443; *Field v. Spokane, Portland etc. R. Co.,* 64 Wash. 445, 117 Pac. 228; *McCanna v. Silke,* 75

Wash. 383, 134 Pac. 1063; *Beach v. Seattle,* 85 Wash. 379, 148 Pac. 39.

A critical reading of these decisions we think will readily disclose that they all involve injuries either to mere guests, employees, or passengers being carried for hire, none of whom had any control over the operation of the respective vehicles on which they were riding when injured. We are of the opinion, in view of the ownership of the bicycle, the general possession of and control over it by Frank, the acquiescing by him in the temporary control over it by Edward for the purpose of conveying them both on this hazardous journey, which we think was their common enterprise or adventure, that the trial court did not err in telling the jury, in effect, that whatever negligence Edward was guilty of, in carrying out this their joint enterprise or adventure, was attributable to Frank and became, in law, his negligence. In other words, the trial judge did not err in so deciding as a matter of law, in view of the undisputed facts on that subject. Observations made in the text of Huddy, Automobiles (5th ed.), at § 682, and the decisions there cited, lend strong support to this conclusion. The decisions of the Virginia and Utah courts in *Washington & O. D. R. Co. v. Zell's Adm'r,* 118 Va. 755, 88 S. E. 309, and *Derrick v. Salt Lake & O. R. Co.,* 50 Utah 573, 168 Pac. 335, seem to us, in principle, to be directly in point.

Contention is made that the trial court erred in giving to the jury the following instruction:

"In order for the plaintiff to recover in this case he must satisfy you by a fair preponderance of the evidence that the defendant was negligent as charged in his complaint, and as to the truth of all the material allegations contained in his complaint."

The argument is that this was erroneous, since the complaint alleged several acts of negligence and that

proof of one or more might sustain recovery without proof of all. The acts of negligence are not plead separately in the complaint. The summary made of them in appellants' brief is as follows:

"(1) That the automobile was being driven south at a high, dangerous and negligent rate in the excess of thirty-five miles per hour. (2) That Margaret Leonard negligently and carelessly failed to keep a proper lookout. (3) That Margaret Leonard negligently and carelessly failed to sound a horn or give any other warning of her approach and negligently and carelessly failed to so operate said automobile as to avoid collision.

"The paragraph in the complaint is not divided into sections, in the manner in which we have written it, but the several distinct charges of negligence are there, and if the jury believed any one of them, it would be sufficient to be the foundation of a judgment against respondent."

This challenged instruction does not stand out by itself; but is embodied in a general instruction given by the court touching the question of burden of proof. No instructions were requested in behalf of the plaintiffs. Other instructions were given which seem to leave the jury free to find in favor of the plaintiffs and award them recovery on some one or more of these acts of negligence without finding the defendants guilty of all of them. However that may be, it seems to us, in view of the fact that these acts of negligence are all plead together in one paragraph of the complaint, separated only by commas, and in view of there being no requested instructions in behalf of the plaintiffs, asking the court to specifically instruct the jury as to what it might find touching these acts of negligence, viewed separately, that the plaintiffs are not in a position to now complain of the particular instruction which they question.

One or two other claims of error are made, but we think they are so wholly without merit as to not call for discussion.

The judgments are affirmed.

MITCHELL, FULLERTON, MAIN, and TOLMAN, JJ., concur.