[No. 16740.   Department Two.   December 29, 1921.]

CATHERINE P. SADLER, *as Administratrix etc.*,
*Respondent*, v. NORTHERN PACIFIC RAILWAY
COMPANY *et al., Appellants.*[1]

RAILROADS (66)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. While it is a general rule that the contributory negligence of one riding as a guest in an automobile is a question for the jury in case of personal injuries resulting from a collision, yet where the evidence conclusively shows the guest guilty of such negligence, he or his personal representative should be nonsuited.

SAME (66). Where an automobile truck was approaching a railroad crossing at a speed of three miles an hour, and a passenger riding as a guest on the side from which a railroad train was approaching could have had an unobstructed view of the train for the distance of a thousand feet and could have warned the driver to stop in good time or could have left the truck, he was guilty of such contributory negligence as to preclude recovery by his personal representative for his death.

SAME (66). One operating a train has a right to assume that a person approaching the track in an automobile will use reasonable care for his own protection, and will also give the train the right of way to which it is entitled under the law; and the operator of the train is not required to limit the speed or stop until it is apparent that those in the automobile about to cross the track are not aware of the approach of the train, or do not intend to give it the right of way.

SAME (66). The duty imposed upon railway companies of giving signals on approaching highway crossings and of limiting their speed within city limits does not relieve the driver of a machine or his guest of the duty to use reasonable care; and where a guest of the driver could have seen or heard the approach of a train in time to save himself, his personal representative cannot recover for his death, even if the train failed to signal its approach or was exceeding the speed limited by city ordinance.

Appeal from a judgment of the superior court for King county, Hall, J., entered June 24, 1921, upon the

[1]Reported in 203 Pac. 10.

verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Reversed.

*C. H. Winders,* for appellants.

*Charles E. Congleton (George F. Hannan,* of counsel), for respondent.

HOLCOMB, J.—This is an action for the alleged wrongful death of James Sadler, who was a guest in an automobile truck operated by Arthur Ball, and which was struck by a passenger train operated by appellants, within the city limits of Seattle, at a grade crossing known as Spokane avenue, about 4:15 p. m., June 29, 1920.

The deceased was riding on the right-hand and north side of the seat, with the driver and the driver's son, who was in the middle of the seat. The driver, Ball, occupied the left-hand seat.

Spokane avenue runs east and west and crosses the Northern Pacific main line tracks, running north and south, at about right angles. The train which collided with the truck was a passenger train leaving the Union passenger station in Seattle and running southerly. The Ball truck was going westerly. From the east of the railroad grade Spokane avenue is built upon tide flats, and for a distance of about a quarter of a mile there was no obstruction of any kind to prevent a view of the railroad tracks to the north for quite a distance east of the crossing. A building, about one thousand feet north of the Spokane avenue crossing, known as the Star Machinery building, is the first building to obstruct the view of the railroad track to one approaching for several hundred feet from the east. Horton street is the first street which is opened and traveled to the north of Spokane avenue. The Star Machinery

building is constructed adjacent to the south line of Horton street.

On the day in question, Spokane avenue, for quite a distance east of the railroad tracks, was rough and in bad condition, the former trestle which had supported the roadway having burned, and the right of way consisting at that time of boards laid on a sawdust fill. For about one hundred feet the roadway of Spokane avenue went up a slight incline to reach the level of the railroad tracks. About the time of the accident, there had been a fire in the sawdust fill on the east side of the railroad tracks to the north of Spokane avenue, and there were a number of firemen in the vicinity at the time. The fire had been put out, but there was some hose upon the plank roadway, and Captain Boyle of the fire department was relaying machines along that part of the roadway, and at the time the Ball truck approached, four automobiles had been stopped at distances of from one hundred to one hundred and fifty or two hundred feet from the railroad track, he (Captain Boyle) standing about one hundred feet east of the track. The first of these machines got over some time before the accident. The second was driven by one Griffiths; the third driven by Ball (the car which was struck), and the fourth driven by one Wright. This witness testified that he saw the train approaching when it was back about one thousand feet from the point of accident, and that there was nothing which would obstruct the vision of any one approaching the track from the east for a minimum distance of at least one thousand feet. Ball himself testified that, about the time he passed Captain Boyle about one hundred feet from the track, or at the least seventy feet, he looked in a northerly direction, where he could see a thousand feet, and saw no train ap-

proaching from that direction, and then went forward and did not make any further observation in that direction; that, if he had looked, there was nothing to prevent him, and nothing to prevent Sadler, who was on the side nearest the train, from seeing the train for about one thousand feet. His car was moving at the rate of about three miles per hour, and up a slight incline, and could have been stopped almost instantly. Wright, who was driving the automobile immediately following Ball's, testified that he looked up and saw the train when it was back one thousand feet, and did not attempt to cross the track. At that time Ball was back over fifty feet from the point of the accident. Captain Boyle testified that he heard the train whistle and looked up just after Ball passed him, and the train was then back over a thousand feet.

The complaint alleges negligence' on the part of appellants in four particulars: (1) that the train was operated at an excessive and unlawful rate of speed, in violation of the ordinances of the city of Seattle; (2) that the train crew gave no warning of its approach, either by bell, gong or whistle; (3) that appellants failed and neglected to keep a proper lookout for traffic; and (4) that appellants failed to keep a watchman at the crossing.

In the instructions the court withdrew from the consideration of the jury the allegations as to negligence in failing to keep a proper lookout and in failing to have a watchman at the crossing, there being no evidence in support thereof.

The automobile in question was a touring car made over into a truck, with one seat, and no curtains on either side to obstruct the view.

Sadler was a working man, working in the vicinity of the Spokane avenue crossing, and when Ball had

finished taking on some furniture at the plant of a furniture factory in the vicinity of this crossing, Sadler went up to him and asked him for a ride into town in the truck, which was granted. Sadler never owned an automobile nor operated one, and did not know how to operate one. Ball had never been over this part of Spokane avenue before and was not familiar with it. There was, however, a cross-arm sign at the crossing showing that it was a railroad crossing, and the tracks were in plain view.

There was testimony that the train consisted of an engine, mail car, and three coaches, and was going at a speed variously estimated at from thirty-five to fifty miles per hour, and running very smoothly. It must be noted, however, that it made sufficient noise for other persons in that vicinity to hear it by its rumbling. There is a conflict in the evidence as to whether the bell was rung or the whistle blown as the train approached this crossing, but there is no dispute of the testimony of the fireman that the whistle was blown at Horton street, about one thousand feet away. Ball testified that he did not hear the roar of the train, the bell, or the whistle; that the first he knew of the approach of the train was when it was almost upon him; that he did not ask Sadler to look or listen or take any precautions; that Sadler did not tell him that the train was coming, or say anything; that there was nothing to prevent Sadler from seeing the train for some distance, and that the train came from the side upon which Sadler was sitting.

Ordinance No. 38,045 of Seattle was pleaded by respondent, and is as follows:

"Locomotive and Cars, Speed Limit. Sec. 101. It shall be unlawful for any person having control of the running or drawing of any cars by any steam locomotives, or the control or running of any steam locomotive

alone, to allow or permit the same to go or move along, over or across the surface of any public place, or at any place south of Denny Way and north of Hanford street at a greater rate of speed than six (6) miles per hour.''

Appellants moved to strike the pleading of this ordinance prior to the trial, which was denied by the court, and objected to the introduction of the ordinance as evidence at the trial, which objection was overruled.

Appellants pleaded affirmatively contributory negligence on the part of both Ball and deceased, Sadler, which affirmative allegations were put in issue by denials.

Appellants, at proper times, moved that a verdict be directed, that judgment be entered for them, and after verdict and judgment, moved for judgment n. o. v., and also for a new trial.

Twenty errors are alleged by appellants, but the principal questions involved are the questions of whether Sadler was guilty of contributory negligence, as a matter of law, and whether the court submitted proper instructions upon the evidence in the case, and whether the court erred in admitting the ordinance of Seattle which was pleaded.

It is first contended that there is no evidence of negligence sufficient upon which to justify the submission of the case. The court apparently let the case go to the jury, as far as negligence on the part of appellants goes, under the allegations, first, as to failure to give proper warning signals; and second, as to violation of the ordinance pleaded.

Laying all other propositions to one side, and assuming that the negligence of appellants was shown, we first discuss whether the contributory negligence of the deceased was conclusively established as the proximate cause of the sad accident.

Upon that proposition appellants admit the rule, well established in this state, that the negligence of Ball, the driver, could not be imputed to Sadler, a guest in the automobile; but insists that it was as much the duty of Sadler, the guest, to exercise ordinary care and prudence in protecting himself from threatened dangers as for the driver of the automobile; and this is true. The question is whether or not it was a question solely for the jury, or whether the contributory negligence of Sadler was so conclusively shown as to make it a pure question of law for the court.

A great many cases have been cited, and more can be cited, where various courts have construed the duty of the guest in a vehicle, and have held his omission to perform such duty as necessarily precluding him or his representative from recovering. By the great weight of authority in such a situation, it is generally a question for the jury, and such is the theory of our own decisions. *Wilson v. Puget Sound Elec. R.*, 52 Wash. 522, 101 Pac. 50, 132 Am. St. 1044; *Field v. Spokane, Portland etc. R. Co.*, 64 Wash. 445, 117 Pac. 228; *Beach v. Seattle*, 85 Wash. 379, 148 Pac. 39; *Allen v. Walla Walla Valley R. Co.*, 96 Wash. 397, 165 Pac. 99.

In the *Wilson* case, *supra*, a paid passenger was riding in an automobile for hire beside the driver, and we held that he was not guilty of contributory negligence in not warning, advising or directing the driver in a case of emergency, or not attempting to control the acts of the driver in passing other cars. It is also stated in that case:

"It would certainly be an extreme case where the court would be warranted in announcing, as a rule of law, that a passenger in an automobile was required to warn, advise, or direct its driver, or to apply to such passenger the doctrine of 'stop, look and listen.' We

are impressed . . . that ordinarily the only obligation on such passenger is to 'sit tight'."

We are impressed that the doctrine of "sitting tight" should not be applied except in the instance of sudden emergency, such as existed in the *Wilson* case, and cannot be extended to all situations.

In this case there was not a sudden emergency in the sense that it came, or should have come, so unexpectedly that the discovery of the danger and the accident itself were necessarily almost instantaneous and simultaneous.

Under the facts in this case, had the passenger looked northward up the track on his side of the car at any time after the car started up the incline toward the track at the speed of three miles per hour until within a very few feet of the track, he could not have avoided discovering the train and observing its rapid approach, and doubtless the slightest warning to the driver would have caused him to stop in good time; and, at the rate the truck was' moving, the passenger could have left the truck without danger to himself. Appellants place great reliance upon our cases of *Cable v. Spokane & Inland Empire R. Co.*, 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224, and *Hoyle v. Northern Pac. R. Co.*, 105 Wash. 652, 178 Pac. 810.

The *Cable* case was one where the driver of an open buggy, having with him as a passenger his daughter seventeen years of age, was held to be guilty of contributory negligence in not stopping to look and listen before driving upon an interurban railway track; and the daughter was also held to be guilty of contributory negligence, in the absence of a showing that she endeavored to stop the horse, or to have her father do so, or any attempt on her part to take precaution, or that she was prevented from doing so.

The distinction between that case and this is only

in the fact that Ball, the driver, testifies that, when seventy or one hundred feet from the track, he looked northward and saw no train, and that he did not look any more. The *Hoyle* case, *supra,* where Hoyle, an employee of the driver of the automobile at the time of the accident, was held guilty of contributory negligence in failing to keep a lookout and observe the passenger train then due and rapidly approaching from his side upon a straight track, in full view. The only distinguishing facts between that case and this are that Hoyle had been employed upon the farm for about six months previously; the accident occurred upon a farm crossing, and he was familiar with the fact that the train which struck them was due at that time, and that it ran very rapidly along that part of the track. In the case at bar, while it is true the passenger was not familiar with the locality in which the accident occurred, the railroad tracks and the crossing-sign were in plain view, and there was an unobstructed view for one thousand feet or more to the north, extending the nearer they approached the track. It seems that the slightest observation and care would have discovered the danger in time to avoid the accident.

The court instructed the jury that one operating a locomotive and train has a right to assume, until the contrary becomes evident, that one approaching the track in an automobile will give the train the right of way, and is not required to attempt to bring his train to a standstill because the automobile may be seen to be approaching the track; but has a right to assume, until the contrary appears, that the occupants of such automobile will use reasonable care for their protection, and will give the train the right of way to which it is entitled under the law; and that those in charge are not required to limit or stop their locomotive and

train until it is apparent that those in the automobile about to cross the track are not aware of its approach, or do not intend to give it the right of way.

The jury were also instructed that the purpose of imposing upon railway companies the duty of giving signals prior to reaching highway crossings, and in limiting their speed within city limits, is to give warning to those about to use such crossing and to enable the train crew to have their engine and train in more sufficient control, but such duty so imposed upon railroad companies does not relieve one about to use such crossings, whether he be the driver of the machine, or situated, as was the deceased, Sadler, on the front seat with the driver, of the duty to use reasonable care for his own protection, or the positive duty imposed upon one in the position of the deceased, Sadler, to look and listen as he approaches the railroad track of which he has knowledge; and in this case, even if the jury should find that the speed at which this train was approaching was excessive, and that all of the signals which they find should have been given were not given, yet, if the deceased, Sadler, by exercising reasonable care in the way of looking and listening, or in the taking of such other precautions as a reasonably prudent man would take for his protection, could have otherwise seen or heard the approach of the train from the noise or sounds incident to its operation, if there was such noise or sound, then the fact that some signals were not given, or that the train was going at a rate of speed greater than that provided by the city ordinance, would not permit a recovery on behalf of the surviving widow; or, if the jury should find that the deceased, Sadler, failed to exercise that degree of care imposed upon him, she should not recover, irrespective of the negligence on the part of the defendants, or either of them.

These instructions stated the law correctly, and in

spite of these instructions the jury must have found that Sadler looked and listened as he approached the railroad track, and therefore exercised reasonable care, or took the same precautions as a reasonably prudent man would have taken for his protection; and this in face of the fact, as testified to by Ball, the driver, that Sadler said nothing to him, and in face of the facts that the train could have been seen for a distance of seventy feet back from the track one thousand feet away, and in plenty of time to warn the driver, or to have left the truck. In face of these undisputed facts, we feel obliged to say that the matter of Sadler's contributory negligence was conclusively established and left no fact upon that question for the jury to determine.

Every case depends largely upon its own facts for determination. The case before us falls within the rules announced in the cases of *Cable v. Spokane & Inland Empire R. Co.*, 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224; *Hoyle v. Northern Pac. R. Co.*, 105 Wash. 652, 178 Pac. 810. See, also, *Sherris v. Northern Pac. R. Co.*, 55 Mont. 189, 175 Pac. 269; *Robison v. Oregon-Washington Nav. Co.*, 90 Ore. 490, 176 Pac. 594; *White v. Portland Gas & Coke Co.*, 84 Ore. 643, 165 Pac. 1005; *Parmenter v. McDougall*, 172 Cal. 306, 156 Pac. 460; *Brommer v. Pennsylvania R. Co.*, 179 Fed. 577, 29 L. R. A. (N. S.) 924, and case notes; *Rebillard v. Minneapolis, St. Paul & Sault Ste. Marie R. Co.*, 216 Fed. 503, L. R. A. 1915 B 953.

We are forced to the conclusion that the contributory negligence of the deceased was so conclusively established as to leave no question for the jury.

The judgment is therefore reversed and the action dismissed.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.