[No. 9951.  Department One.  March 16, 1912.]

WILL BLAIR, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

STREET RAILWAYS—INJURY TO HORSE AT CROSSING—TRACKS AND FROGS—GUARD RAILS—NEGLIGENCE—QUESTION FOR JURY. It cannot be said that a guard rail in street car tracks at a point opposite a frog, forming a groove that was dangerous to horses, was necessary, as a matter of law, from the fact that, in the opinion of the expert witnesses, it was necessary to protect certain frogs, where it appears that other similar frogs at the point in question, and at another street car crossing in the city, were not protected by such guard rails; and where it was so maintained that horses could not be well driven around it, negligence in its maintenance was a question for the jury.

SAME—CONTRIBUTORY NEGLIGENCE OF DRIVER—QUESTION FOR JURY. A teamster is not guilty of contributory negligence, as a matter of law, in driving a heavy team over street car frogs and switches at a crossing, from the fact that he knew that it was dangerous and that the calks of other horses had been caught in the groove between the rail and the guard rail, at the same place and at other similar situations, where it appears that the guard rail extended clear across the available space, and he made an effort to avoid passing over the rail at right angles so that there was little danger of being caught.

SAME—NEGLIGENCE—EVIDENCE—OTHER ACCIDENTS—ADMISSIBILITY. In an action to recover damages for injury to a horse by reason of its foot being caught between the rail and the guard rail in street car tracks opposite a frog, evidence of similar injuries to other horses on previous occasions at the same place, and at a similar crossing one block distant, is admissible to show the dangerous condition of the track and defendant's knowledge of it.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 2, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort, after a trial on the merits.  Affirmed.

*James B. Howe* and *A. J. Falknor*, for appellant, contended, among other things, that a street railway company

[1]Reported in 122 Pac. 358.

is not liable for injuries resulting from the maintenance of necessary and usual guards for its frogs and crossings. *Gilligan v. Boston Elev. R. Co.*, 194 Mass. 576, 80 N. E. 483; *Bobbink v. Erie R. Co.*, 75 N. J. L. 913, 69 Atl. 204; *Miller v. United R. & Elec. Co.*, 108 Md. 84, 69 Atl. 636, 17 L. R. A. (N. S.) 978; *Alcott v. Public Service Corp.*, 77 N. J. L. 110, 71 Atl. 45; *Morie v. St. Louis Transit Co.*, 116 Mo. App. 12, 91 S. W. 962. Evidence of other accidents at the same crossing was inadmissible. 17 Cyc. 284; 14 Ency. Evidence, p. 821; *Halverson v. Seattle Elec. Co.*, 35 Wash. 600, 77 Pac. 1058; *Gregory v. Detroit United R. Co.*, 138 Mich. 368, 101 N. W. 546; *Johnson v. Manhattan R. Co.*, 4 N. Y. Supp. 848; *Hudson v. C. & N. W. R. Co.*, 59 Iowa 581, 13 N. W. 735, 44 Am. Rep. 692; *Jebb v. Chicago & G. T. R. Co.*, 67 Mich. 160, 34 N. W. 538; *Wilkie v. Chehalis County Logging and Timber Co.*, 55 Wash. 324, 104 Pac. 616.

*Walter L. Johnstone*, for respondent.

PARKER, J.—This is an action to recover damages for injuries to a horse belonging to the plaintiff, which he alleges resulted from the negligence of the defendant in the manner of maintaining its street car tracks at the crossing of Second avenue and Pine street, in Seattle. A trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiff, from which the defendant has appealed.

Appellant maintains double track lines of street railway which cross each other at right angles at the intersection of Second avenue and Pine street, in Seattle. Curved tracks connect the crossing tracks, creating the necessity of maintaining frogs at the several points where the curved rails cross the straight rails. The relative situation of these several tracks is indicated upon the accompanying plat.

The double lines indicate the presence of guard rails inside of and near the main rails upon which the wheels of the cars run. Appellant claims that these guard rails are necessary for the purpose of more effectually keeping the cars upon the tracks while rounding curves and while crossing frogs on straight tracks. This plat was introduced in evidence by appellant, and appears to be drawn with great care for the purpose of representing the exact relative location of the rails and frogs at the place where the injury to the horse occurred. The numbers 1 to 8 inclusive are our own. We have inserted these for the purpose of convenient reference to the several points indicated which we will have occasion to notice later. We may, for the purpose of our

discussion, consider the top of the plat as being north, though it is not exactly so.

On June 6th, 1910, a heavy team of horses belonging to respondent was driven by one of his teamsters west along the north side of Pine street across Second avenue. When the front feet of the horses reached the guard rail numbered one on the plat, one of the horses stepped upon the rail so that the toe calk of one of its front shoes dropped into the space between the main rail and the guard rail and caught there, when the horse attempted to withdraw it. The horse became frightened, and in its effort to free its foot, broke its leg, resulting in such serious injury that it became necessary to shoot the horse. The space between the north track on Pine street and the north sidewalk curb, along which the team was being driven, is not over 17 feet wide. The guard rail where the horse got its foot caught was about twenty feet long, and as will be noticed by its position upon the plat, extended practically clear across this seventeen foot space, so that it could not be avoided by the driver, except to pass around the north end of it on Second avenue, going clear off of Pine street, or by passing around the south end of it over the street car tracks running along Pine street. It is clear that either of these alternatives would be rather an unusual course for a driver to pursue unless there was some special reason therefor. The calk of the horse's shoe which caught between the rails was about three inches long, one inch deep, and three-fourths of an inch thick. It is not shown, nor is there any claim made, that this calk is materially different from that in common use upon heavy horses upon the city streets. The groove between the guard and main rail is about one and one-half inches wide, and about the same in depth; so the calk was evidently caught by reason of the manner in which a horse lifts its feet in walking, rather than because the calk tightly fitted in the groove. Other facts will be noticed in our discussion of counsel's contentions.

Counsel for appellant first contend that their motion for an instructed verdict in appellant's favor was erroneously overruled: (1) Because of want of evidence of appellant's negligence sufficient to support a verdict against it; and (2) because of contributory negligence on the part of respondent's teamster. We will notice these in this order. It is argued in behalf of appellant that the guard rail where the horse's shoe was caught was a necessary appliance incident to a proper operation of its cars, because of the presence of the two frogs shown at numbers 2 and 3 on the plat, and that therefore appellant had a right to maintain the guard rail opposite those frogs even though such guard rail may have created a condition which was dangerous to horses passing over it.

Street car companies may have the right to construct necessary appliances on the surface of the street in connection with their tracks which, in some degree, may render the street somewhat less safe than it would be in the entire absence of street car tracks. Yet, no doubt, there is a limit beyond which street car companies may not go in constructing such appliances as increase the danger to team travel, no matter how necessary such appliances may be to the proper operation of their cars. However, we do not find it necessary to deal with this problem, since we are of the opinion that the evidence warranted the jury in finding against appellant upon the question of the necessity of the presence of this guard rail on the street surface, and the question of the danger it presented to horses passing over it.

There was evidence introduced tending strongly to show that this guard rail, and others similarly situated on straight tracks where teamsters have occasion to drive across them at right angles, are prolific of accidents and injuries to horses more or less of the same nature as the injury here involved. For some reason the guard rails on the curves do not seem to produce such results. This may be because the grooves are wider and have more sloping sides. It seems

quite clear to us that the evidence warrants the conclusion that this guard rail and others similarly situated are dangerous to horses passing over them, and that appellant was negligent in maintaining this guard rail, unless it is excused because of the necessity of so maintaining it.

The necessity for guard rails on the opposite side of the track from frogs, it is insisted, arises because when a car is running against the point of the frog, if the flanges of the wheels on that side of the car are not held away from the frog, they are apt to strike the point of the frog causing the car to leave the track; and that the guard rail on the opposite side of the track results in holding the flanges of the wheels away from the point of the frog, thus insuring the passing over the frog in safety. The question of the necessity of having this guard rail there is necessarily a question of fact for the jury to determine, unless we can say that the evidence leaves no room for honest differences of opinion relative thereto. It is true, we have here the testimony of appellant's witnesses, who are experienced, as to the necessity of guard rails in places of this nature. This is, in effect, opinion evidence and it is not contradicted by other opinion evidence. We think, however, there are facts in the case which might warrant the jury in believing that this guard rail was not necessary at this place. Let us notice some things shown by this record which might induce the jury to so believe. Upon the plat there will be noticed frogs at numbers 4, 5, 6, 7 and 8, which are not materially different from the frogs at numbers 2 and 3, though their angles are not quite so sharp; yet they are not accompanied by any guard rails on the opposite side of the track. There was also evidence that at another street crossing where the tracks are in similar condition as here, there were no guard rails upon the straight tracks. This particular crossing is within one block of what the evidence indicates is the busiest street crossing in the city of Seattle. So it would seem clear that it is not a place where cars would have occasion

to maintain other than a very moderate rate of speed. In view of these facts, it seems to us we cannot say, as a matter of law, that the guard rail was necessary at this point. It is clear from the record that the jury found against appellant upon the ground of the want of necessity for maintaining this guard rail at the place of the accident, as well as upon the ground that it was plainly dangerous to horses passing over it. This sustains the verdict so far as appellant's negligence is concerned.

Was respondent's teamster guilty of contributory negligence? It appears from the evidence that the teamster knew of other horses being caught and injured in a similar manner on previous occasions at this and other similarly situated guard rails. This is the principal basis of appellant's contention that the teamster was negligent in driving the team across the guard rail, he knowing the danger there. From the teamster's testimony, it appears that he turned the horses and drove somewhat diagonally across the rail for the purpose of avoiding the catching of the horses' shoes in the groove. There were, however, some conditions there that prevented him from deviating from a straight course as much as he desired. It appears that when horses are driven diagonally across such a guard rail as this, there is little danger of their shoes being caught in the groove. In view of the fact that this guard extended practically clear across the 17 foot space between the north track and curb line along which teams would ordinarily be driven in that direction, and of the teamster's effort to avoid passing over the guard rail at right angles, we think it was for the jury to say whether or not he was negligent in the course he pursued. We think reasonable minds might differ on this question, hence, it is not one of law for the courts to decide. *Richmond v. Tacoma R. & Power Co.*, ante p. 444, 122 Pac. 351.

It is contended that the court erroneously received evidence of injuries resulting to other horses by having their shoes

caught at this place on previous occasions. This evidence was offered and received evidently upon the theory that it showed the dangerous condition existing there, and also as tending to show appellant's knowledge of such condition. The decisions do not seem to be in entire harmony upon this question, but we think the better rule is in favor of the admissibility of such evidence.

In the case of *City of Topeka v. Sherwood*, 39 Kan. 690, 18 Pac. 933, dealing with a question quite similar to this, the court observes, at page 695:

"One of the facts it was necessary to establish in this action was the condition of the sidewalk. Before the plaintiff could recover, she must prove that it was unsafe to walk over. Of course this could be proven in different ways, and by other evidence than that of other accidents. It is conceded that this is not the most direct and positive evidence of which the case is susceptible; but the simple fact that there were frequent accidents on this part of the sidewalk would tend to show that it was unsafe. When the question of the proper condition or safety of anything constructed is to be determined, evidence tending to show that it served the purpose for which it was designed is always competent, and often the most satisfactory and conclusive in its character. On the other hand, evidence to show that frequent and repeated accidents resulted from its use, would be testimony tending to show that it was not properly constructed. This walk had been tested by actual use, and this evidence tended to show that it was dangerous and unsafe.

"It is objected that the testimony presented new issues which the defendant had not expected, and could not be prepared to meet. In a limited sense every item of evidence material to the main issue presents a new issue in this respect, at least: it invites, by way of reply, a contradiction or an explanation. In no other way did the evidence make a new issue. It was important, as we have said, to show that the sidewalk was unsafe and dangerous, and upon that question the defendant was required to be prepared. . . .

"It is further contended that the evidence of other accidents admitted in this action should have been excluded, for the reason that it was not proven that the other persons

falling on the walk fell over the same plank that the plaintiff did. The evidence shows that only one of them fell at the same or near the same place where she did. It is established, however, that all fell on the sidewalk built of oak plank taken from the bridge. If it had been constructed of pine plank, as required by city ordinance, and secured and fastened down properly, and kept in reasonably good repair generally, the contention of defendant would probably be correct; but the plaintiff's complaint of the sidewalk is that it was not built of suitable material, was not thoroughly nailed down to the stringers in the first place, and had not been kept in even as good condition as it was when constructed. These accidents happening where they did would tend to prove that that part of the sidewalk was poorly built out of unsuitable material, and would be some evidence tending to show a defect in the precise spot where the plaintiff received her injuries."

See, also, *Lombar v. East Tawas*, 86 Mich. 14, 48 N. W. 947; *District of Columbia v. Armes*, 107 U. S. 519; *Smith v. Seattle*, 33 Wash. 481, 74 Pac. 674; *Hansen v. Seattle Lumber Co.*, 41 Wash. 349, 83 Pac. 102. In the last cited case, evidence was received not only showing accidents happening upon the same cogwheels involved, but upon others similarly situated. We think the admission of this evidence was not erroneous.

It is further contended on behalf of appellant that the trial court erred in admitting evidence of similar accidents at Second avenue and Pike street, that being one block distant from the place of this accident. The conditions of the tracks at the Pike street crossing appear to be substantially the same as to their relative location. The grooves between the guard rails and main rails on the straight tracks, however, apparently are not exactly the same as at the crossing here involved. The grooves are somewhat wider and somewhat deeper. The tracks are considerably older and for that reason probably more worn. This was all before the jury, and we are constrained to view this objection as going more to the weight of the evidence than to its relevancy. It did tend

to show, at least in some slight degree, how the shoes of horses may get caught in grooves between the guard and main rails on straight tracks wherever they are so situated that the course of team travel is directly across them at right angles. We do not think the evidence was prejudicially erroneous, even though the groove between the rails does appear to be slightly different from that here involved.

We are of the opinion that the record shows no prejudicial error against appellant. The judgment is affirmed.

Crow, Gose, and Chadwick, JJ., concur.