Argued July 23, decided July 29, 1913.

# ROGERS *v.* PORTLAND RY., LIGHT & POWER CO.

(134 Pac. 9.)

**Damages—Complaint—Sufficiency of Allegations—"Traumatic Neurasthenia."**

1. Where the complaint, in an action against a street railway company for personal injuries, alleged that plaintiff's "nervous system was permanently shattered," this was a sufficient averment that she was suffering from "traumatic neurasthenia," which means a condition of nervous prostration resulting from a wound, to admit evidence by a physician that she was suffering from such disease.

Trial—Objection to Evidence—Hypothetical Question.

2.  An objection to a hypothetical question, involving several distinct propositions or conditions, that one of such conditions is not supported by testimony previously introduced should be specific, so that the attention of the court and counsel can be called to the exact defect.

Street Railroads—Injury—Contributory Negligence—Instructions.

3.  In an action against a street railway company for an injury caused by a street-car colliding with the automobile in which plaintiff was riding as a guest with no control over the driver, an instruction as to the contributory negligence of plaintiff was without evidence to sustain it.

[As to accidents to automobiles at railroad crossings, see note in Ann. Cas. 1913B, 680.]

From Multnomah: Henry E. McGinn, Judge.

Department 1.   Statement by Mr. Chief Justice McBride.

This is an action by Mabel Rogers against the Portland Railway, Light & Power  Company to recover damages for personal injuries.   The complaint alleged, in substance : That the defendant is a street railway company, operating under a certain ordinance of the City of Portland; that on June 23, 1911, plaintiff was riding in an automobile, at the invitation of W. J. Guy, the driver and owner thereof, and that, while so riding upon a public street of the city, the defendant, through its agents and servants, so recklessly, carelessly and negligently operated its car as to cause it to strike and collide with the automobile in which plaintiff was riding, whereby she sustained certain injuries, particularly set forth, without any fault on her part or of the driver of the automobile; that defendant was negligent in that it was then operating the car on a downgrade of 5 per cent without having the car under proper control and at a rate of speed prohibited by the city ordinances, to wit, at a speed greatly in excess of 12 miles an hour; that defendant failed to sound any alarm or other warning of the approach

of its car; that it failed to stop the car after the motorman in charge thereof saw, or with the exercise of reasonable prudence, care, and caution might have seen, the automobile upon or near the track ahead of the car, there being ample time within which to stop the car and to prevent a collision; that, by reason of and as a direct and approximate result of said negligent acts of defendant, plaintiff had endured great pain, suffering, and mental anguish; that her nervous system is permanently shattered; and that she is seriously and permanently injured about her head, body and limbs and is permanently scarred and disfigured.

The defendant answered, denying the allegations of negligence, and alleging carelessness and negligence on the part of Guy, the driver of the automobile. There was also a further defense, the substance of which is as follows: That on June 23, 1911, plaintiff was riding in an automobile which was then and there being driven by one W. J. Guy; that said plaintiff was seated in said automobile in easy speaking distance of the driver thereof, and there was nothing to prevent free and easy communication between them; that at the time of the accident referred to in plaintiff's complaint, and as one of the defendant's cars was being operated in a prudent manner in a southerly direction along said Union Avenue, and somewhere in the vicinity of its intersection with Prescott Street, the said driver of said automobile, W. J. Guy, as the plaintiff then and there well knew, carelessly and negligently, and without looking or listening for approaching cars, or exercising any or proper care or precaution, suddenly and unexpectedly, and without previous notice or warning, drove said automobile at a high and dangerous rate of speed in a westerly direction along said Prescott Street out upon said Union Avenue and

directly and immediately in front of and into said south-bound car; that said plaintiff at and prior to the happening of said accident carelessly and negligently failed to keep any or a proper lookout on her own account for any approaching cars, and carelessly and negligently failed to exercise any or proper care or precaution for her own safety, and carelessly and negligently, and without looking or listening, and without remonstrating with the driver of said automobile or requesting him to delay or turn aside, suffered and permitted said automobile to be driven out upon said track as aforesaid; that said accident and any injury which plaintiff may have sustained thereby resulted from the plaintiff's own negligence and want of care, and happened without any negligence on the part of the defendant or any of its agents or servants in charge of its said car.   On the trial the court permitted J. H. Bristow, a medical witness, to testify that plaintiff, by reason of the injuries she sustained, was suffering from traumatic neurasthenia.   This testimony was objected to by defendant as not being within the issues made by the pleadings, and its admission is here assigned as error.

Substantially the following hypothetical question was asked Dr. Bristow and Dr. House:

"Well, now, Doctor, I will put this hypothetical question to you: Now, Doctor, assuming that she (the plaintiff), a woman 31 years of age, a waitress by occupation, who has never been ill since the age of 12 years, who has worked steadily for a number of years, and who has been able to earn from $10 to $15 a week, who, on the 23d day of June, 1911, while riding in an automobile, was struck by a street-car, was thrown out and dragged some feet, and whose arms and limbs were scratched and bruised, and who was generally shaken up, who at the time was exceedingly frightened and was not rendered unconscious, and who soon

raised to her feet and was able to wash the blood off her arm, who then went home on a street-car and within an hour commenced to work at her business, waiting table, and was soon taken sick at the stomach and forced to quit work, and thereafter remained in bed for a week or ten days, and who since that time has suffered all, or most all, of the time from a feeling of extreme nervousness, who formerly weighed 117 pounds, and who now weighs 100 pounds and 8 ounces, who weighed on the 12th day of April 103 pounds, whose height is 5 feet, does not sleep well at night, but who awakes from her sleep, startles, who suffers much from pain in the back of her head, who has much headache, which is described as neurasthenia (I will eliminate that), who is sore on one hip, who says that being so nervous is what worries her most, who for the last year—who since the 23d day of June, 1911, has been unable to work, except at certain periods, and then but temporarily, who has been forced to quit her work on several occasions since said accident because of her nervous condition, who has never been afflicted with anything of this sort before her injury on the 23d of June, 1911, who cries easily, whose head has a sensation of being thrown out, and who finds it hard to straighten her head, now, assuming these to be the facts, what would you diagnose the condition of this lady to be?''

To this question objection was made on the ground that the question covered symptoms and facts which had not been disclosed by the evidence in the case. Other alleged errors and objections are noted in the opinion. The plaintiff had a verdict and defendant appeals.                    Affirmed.

For appellant there was a brief over the names of *Mr. F. J. Lonergan* and *Griffith, Leiter & Allen,* with an oral argument by *Mr. Lonergan.*

For respondent there was a brief, with oral arguments by *Mr. W. T. Vaughn* and *Mr. Wilfred E. Farrell.*

Opinion by Mr. Chief Justice McBride.

We will consider the objections urged on this appeal in the order in which they are stated in the able brief of defendant.

1. The first objection is that the court erred in admitting evidence that plaintiff was suffering from traumatic neurasthenia, for the reason that the complaint did not allege the existence of such a condition. Translated from the jargon of the medical profession into plain English, the term "traumatic neurasthenia" means a condition of nervous prostration or debility resulting from a wound or blow; and we think this condition is sufficiently pleaded when the plaintiff sets up that, by reason of the negligent acts of defendant, "her nervous system is permanently shattered." The pleader translated the term into pure English in the complaint, and the surgeons retranslated it into Greek; but the condition is sufficiently alleged.

2. The second objection is to the hypothetical question propounded to the medical witnesses; the ground of objection being that the question included conditions not shown to exist by the evidence previously offered. We have carefully compared the alleged facts and conditions stated in the hypothetical question with the testimony and find that with one trifling exception, which was immaterial and could not possibly have affected the answer given, there is some evidence tending to support the facts stated in the hypothesis submitted. The objection was general, and we are of the opinion that in an objection to a hypothetical question involving several distinct propositions or conditions, an objection that one of such

conditions is not supported by testimony previously introduced should be specific so that the attention of the court and counsel can be called to the exact defect, with a view of reframing the question, so as to obviate the objection. This would seem to be only fair to the court and to counsel; but, in any event, the question asked in the case at bar did not substantially vary from the testimony previously admitted.

The third objection is that the court erred in not taking the evidence of traumatic neurasthenia from the jury; and the fourth objection is to the instruction of the court submitting that condition for its consideration, holding, as we do, that traumatic neurasthenia is sufficiently pleaded. These objections cannot be sustained. The fifth objection goes to the same proposition.

3. The last contention is the refusal of the court to give certain instructions as to contributory negligence on the part of plaintiff. The instructions are too long to be included in this opinion, and we summarize them from the brief of defendant: "These instructions were, in substance, that if the plaintiff saw, or could by the exercise of ordinary care have seen, the cars approaching and failed to warn the driver and made no objection when he drove upon the track in front of the car, she was guilty of negligence. Also that if the plaintiff saw the street-car of the defendant approaching, notified the driver of the automobile of that fact, and then, after so doing, permitted him to go upon the track in front of the approaching car without remonstrating with him, or requesting him to stop or turn aside, she was guilty of negligence. Also that if the plaintiff saw the street-car approaching and notified the driver, and after so doing the attention of the driver was attracted by a car approaching on another track which the automobile was about to cross,

and that, by reason of preoccupation of mind on the part of the driver or on account of his attention being attracted to the other car, he failed to see the one which struck the automobile, and that if the plaintiff knew of the proximity of the car which struck the machine and failed to again warn the driver of the automobile, but suffered him to go upon the track in front of the car, she was guilty of negligence.  Also that if the plaintiff, while seated in the automobile, was talking with the driver and was carelessly and negligently paying no care or attention to the manner in which the same was being driven by the driver, and that by reason of the conduct of the plaintiff the attention of the driver was attracted so that he did not look or listen or use ordinary care in driving the automobile, the plaintiff was guilty of negligence.''

There was absolutely nothing in the testimony to justify any instruction as to plaintiff's contributory negligence.  She had no control or authority over the driver, but was merely a guest, and, as any woman under the same circumstances would have done, she relied upon her escort to look out for her safety.  She was not charged with the duty of looking out for possible dangers.  If a possible danger was called to her attention, and she realized it, it was her duty to call the attention of her escort to it; and this she did. When she saw a car coming she called his attention to it.  Had she assumed the task of looking out for cars, the case might have been different; but such duty had not been committed to her, and she had not assumed it.  There is nothing to indicate that she acted differently from any other woman under the same circumstances, and the instructions given by the court were quite as favorable to the defendant as the law warranted.

We find no error in the record and the judgment is affirmed.                                    Affirmed.

Mr. Justice Moore, Mr. Justice Burnett and Mr. Justice Ramsey concur.