[No. 12235.    Department Two.    May 6, 1915.]

MYRTLE BEACH, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.[1]

MUNICIPAL CORPORATIONS—DEFECTIVE STREETS—LIABILITY. In an action for injuries received by driving an automobile into a gulch across one of the city streets, there was sufficient evidence to present the question of the city's negligence to the jury, where it appeared that a gulch thirty feet deep and eighty feet wide crossed such street, but that the lighting of the streets on each side of the gulch gave the impression of a continuous street; that there was no barrier, or danger signal or light near the gulch, except an ordinary incandescent light on a telegraph pole, which tended rather to obscure than disclose the gulch, and in the obscurity the ravine presented the appearance of a continuation of the unpaved portion of the street.

NEGLIGENCE—IMPUTED NEGLIGENCE—DRIVER OF VEHICLE. Contributory negligence of the driver of an automobile in exceeding the speed limit is not imputable to an invited.guest, who was not in a position to exercise some control over the driver, had no reason to believe the driver was careless or incompetent, did not appreciate that the speed was dangerous, and was unfamiliar with the streets over which she was riding.

JURY—CHALLENGES—PREJUDICE. Challenge for cause to a juror was properly sustained, on the ground that it would take evidence to remove his initial prejudice, where he admitted on examination that he had a prejudice against young people attending dances, and that the fact that the young people were returning from a social dance would prejudice him against plaintiff who was suing for injuries received while returning from a dance; even if the juror on

[1]Reported in 148 Pac. 39.

further examination, stated that, while he was decidedly opposed to dances, if it appeared that plaintiff's injuries in no manner grew out of her having attended a dance, he would not lay that up against her, but would go according to the law and testimony.

JURY—TERM OF SERVICE—EXPIRATION DURING TRIAL—EFFECT. If a jury is properly drawn and impaneled, and enters upon a trial within the regular jury term, it is a properly constituted jury to complete the trial, though it may carry them over their statutory term as jurors; notwithstanding 3 Rem. & Bal. Code, § 94-4, providing jury terms to commence on the first Monday of each month and end on the Saturday preceding the first Monday of the next month unless changed by order of the judge, and notwithstanding that no such order for a change was made.

APPEAL—REVIEW—HARMLESS ERROR—WAIVER. Where, in an action for personal injuries, the court, in withdrawing from the jury the question of damages as to certain injuries not included in the complaint, failed to mention one of the items omitted, the omission was not prejudicial error, where counsel stated that the withdrawal was sufficient and failed to request instruction on the point, and the verdict was not excessive.

MUNICIPAL CORPORATIONS—INJURIES FROM DEFECTIVE STREET—EVIDENCE—SIMILARITY OF CONDITIONS. In an action for injuries received from driving an automobile into a gulch crossing a city street, on account of the unguarded and deceptive condition of the street, evidence as to the condition of the street some eight months after the injury was not error, where the comparative conditions of the street were not materially changed, and on the subsequent date, an auto truck, on a similar dark night, and with a headlight illuminating the roadway for about the same distance as the other machine, was driven over the same course and the gulch was not discovered by the driver until his front wheels went over the edge.

APPEAL AND ERROR—PRESERVATION OF GROUNDS—OBJECTIONS. Testimony of a pedestrian that, to one approaching a gulch in the nighttime, the street had the appearance of a continuous one, cannot be urged on appeal as inadmissible, because the time of witness' observation was not fixed, where no objection was made in the court below.

TRIAL—INSTRUCTIONS—CONSTRUCTION AS WHOLE. Though isolated parts of instructions, standing alone, might be objectionable, it would not constitute error, where, taken in connection with the balance of the instructions in context, they properly state the law.

TRIAL—INSTRUCTIONS — REQUESTS — INSTRUCTIONS ALREADY GIVEN. The refusal of requested instructions is not error, where they are fully covered by the instructions given.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 7, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger in an automobile through the negligent maintenance of a street.    Affirmed.

*James E. Bradford* and *Howard M. Findley*, for appellant.
*Beeler & Sullivan*, for respondent.

ELLIS, J.—This is an action for damages resulting from personal injuries to the plaintiff caused by the alleged negligence of the defendant.

Boston street, in the city of Seattle, runs east and west, Queen Anne avenue north and south.   The Whittlesey home was located near the intersection of Fourth avenue, north, and Crockett street.   Fourth avenue, north, is parallel to and six blocks east of Queen Anne avenue.   Crockett street runs in the main parallel to and one block south of Boston street. Crossing Crockett street a little south of its intersection with Third avenue, north, is a gulch or ravine about thirty feet deep and nearly eighty feet wide.  On the west side of this ravine, the pavement on Crockett street extends to within five or six feet of the abrupt edge of the ravine.   From Queen Anne avenue east to Warren avenue, a distance of two blocks, Crockett street has a considerable up grade.   From Warren avenue east almost to the gulch it is considerably down grade. From the gulch east to Fourth avenue, north, the grade again rises.   The altitude of Crockett street at its intersection with Warren avenue about two blocks west of the ravine, and at its intersection with Fourth avenue about one and one-half blocks east of the ravine, is about the same, so that going eastward on Crockett street one's vision from Warren avenue naturally strikes a point on Crockett street about Fourth avenue.   The ravine, the balance of the street in the block in which it is located being unpaved, gives in the nighttime to an observer coming east on Crockett street the appearance of a continuous street with an intervening un-

paved block, the street lights being continuous on both sides of the ravine.

On the night of the accident, there was no barrier, red light or any danger signal of any kind to indicate the presence of the gulch. There was no light of any kind near the gulch except a street light on a telegraph pole at the northwest corner of Crockett street and Third avenue. This was not an arc light, but an ordinary incandescent lamp. The evidence shows that this light rather obscures than discloses the gulch, as it is of such height that it is directly in one's face as he approaches from the west, so that the gulch is not perceived until after passing the light. Several witnesses who had viewed this situation in the nighttime testified in substance that the contour of the ground and the lighting of the streets on each side of the gulch gives the impression that the street is a continuous street until one is very near the brink of the ravine.

The plaintiff, on the evening of March 30, 1913, as the guest of the Whittlesey family, attended a social dance held at a hall near the intersection of Boston street and Queen Anne avenue, the party going in the Whittlesey automobile. The dance concluded near midnight, and the Whittlesey party, including the plaintiff, started to the Whittlesey home in the automobile, which was driven by a young man of the family. The side curtains and wind shield were up and the lamps were lighted. The automobile proceeded one square south on Queen Anne avenue, then east on Crockett street and up grade to Warren avenue; thence down grade for a distance of two squares, plunging into the ravine, inflicting the injuries of which plaintiff complains.

There is no satisfactory evidence that the automobile was proceeding at a very rapid rate of speed until after it started down grade. From there on the speed was increased, and it was evidently excessive at the time of the plunge. The appellant sat on the front seat with the driver, but the evidence indicates that she had no appreciation of the speed of the

automobile and that she had no knowledge of the existence of the gulch. She had never been in this part of the city before and was unfamiliar with the streets. She testified that she could see the lights on the other side of the ravine, which she noticed only as a kind of dark spot or shadow in the street, but did not think it indicated any danger. She did not attempt to exercise any control over the automobile or to select the streets over which it was driven. The jury returned a verdict in favor of the plaintiff for $3,500. From the judgment thereon, the defendant appeals.

We shall spend little time in a discussion of the negligence of the appellant. A careful consideration of the whole record convinces us that the city was grossly negligent in leaving a gulch of this character, with the pavement of the street running to its very brink, without providing a barrier of any kind or any red light or other danger signal to indicate its presence. There was ample evidence to take the case to the jury upon the primary question of appellant's negligence.

The question of respondent's contributory negligence was also one clearly for the jury. She had no control over the automobile, had never driven or operated one and, so far as the record shows, had no reason to believe that the driver was incompetent or careless. The contributory negligence charged is that the automobile was running at an excessive rate of speed. This is probably true, but there is no evidence that the respondent appreciated that the speed was dangerous, and the evidence is positive that, though looking straight ahead, there was nothing to warn her of the existence of the gulch or to lead her to believe that there was any danger. She was merely an invited guest; and even conceding that the driver was running the car at an excessive rate of speed, that fact would not impute negligence to the respondent. The correct rule in such cases is that declared in *Cable v. Spokane & Inland Empire R. Co.*, 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224, and quoted with approval in *Wil-*

*son v. Puget Sound Elec. R. Co.*, 52 Wash. 522, 101 Pac. 50, 132 Am. St. 1044, as follows:

"Ordinarily where one rides in a vehicle with the driver thereof and is injured by the negligence of a third person, to which negligence that of the driver contributes, this contributory negligence is not imputable to the passenger, unless said passenger has, or is in a position to have and exercise some control over the driver with reference to the matter wherein he was negligent."

See, also, *Shearer v. Buckley*, 31 Wash. 370, 72 Pac. 76; *Brabon v. Seattle*, 29 Wash. 6, 69 Pac. 365.

The appellant insists that the court erred (1) in sustaining the challenge to a juror for cause; (2) in not sustaining appellant's motion to discharge the jury as disqualified; (3) in improperly admitting certain evidence; (4) in giving certain instructions and refusing to give certain others.

I. In his examination on his *voir dire*, Louis Benson, who had been called as a juror, answered questions as follows:

"Q. Have you any prejudice against young people attending social dances? A. Yes, sir, I have. Q. And the fact, if it occurred in this case, that these people were returning from a social dance would prejudice you, would it? A. It would."

The respondent interposed a challenge for cause. On further examination and after much explanation by counsel, the juror finally stated, in substance, that while he was decidedly opposed to dances, if it appeared that the fact that respondent was injured in no manner grew out of her having attended a dance he would not lay that up against her, but would "go according to the law and the testimony." Over the appellant's resistance, the court sustained the challenge. We find no error in this. The matter was one resting largely in the discretion of the trial court. From the whole colloquy, as it appears in the record, we are of the opinion that it would have required evidence to remove the initial prejudice which the juror admitted.

II. The appellant contends that the jury was disqualified, in that, though all the jurors were qualified at the time the jury was impaneled, four of them became disqualified a few days after the trial began, by expiration of their time of service, under the statute (3 Rem. & Bal. Code, § 94-4) providing that jury terms shall commence on the first Monday of each month and end on the Saturday preceding the first Monday of the next month, unless the commencing or ending of the term be changed by order of the judge, and that in this case no such order was made. The four jurors in question were summoned for the jury term commencing on the first Monday of March, 1914. The jury was impaneled on Thursday, April 2, 1914, and the trial commenced on that day. It must have been then evident that the trial would continue over the following Monday. Though the fact of the approaching expiration of their term was developed on the examination of the jurors, no objection was made to their entry upon the trial on that account, nor until Tuesday, April 7th, when counsel for appellant in the midst of the trial moved to "dismiss the case" on the ground that the jury as *then* constituted was not a legal jury. The motion was properly denied. To construe the statute as disqualifying a jury which, prior to the expiration of its term of service, had been impaneled and had entered upon a trial would lead to absurd results. Such a construction would render impossible a jury trial which could not be completed for more than a month, and might render the jury useless during a large part of the jury term if the jury cases pending each required several days for trial. Counsel rely upon our decision in *Jennings v. Puget Sound Traction, Light & Power Co.*, 76 Wash. 15, 135 Pac. 468, but in that case the jurors had served their full term before the jury was impaneled. No properly constituted jury had ever been secured. The distinction from the case here is too plain to require further comment. Of necessity we hold that if a jury is properly drawn and impaneled and enters upon a trial within the jury

term it is a properly constituted jury to complete the trial.

III.    The appellant next contends that the court improperly admitted, (a) Evidence of certain physical injuries not mentioned in the claim filed with the city clerk; (b) Evidence of a subsequent accident at the same place to an auto truck; (c) The testimony of a pedestrian as to the appearance of the street at night, the time of his observation not being fixed.

(a)    Respondent's claim filed with the city clerk specified with much particularity her external injuries and injuries to her neck and throat, merely describing other injuries as "internal injuries." Two physicians testified as to her condition, stating in substance that, as a result of the injuries, the ovaries were tender, the uterus inflamed, the cervix ulcerated, and that a curettment would be necessary. The respondent testified that, since the injury, her menses have appeared much more often than formerly, at irregular periods, are very painful, and that she experienced that condition for the first time shortly after the accident on March 30, 1913. The claim was filed on April 26th. The appellant objected to all of this testimony, and moved to strike it on the ground that these things were not mentioned in her claim. The objections were overruled and the motion denied. At the close of respondent's evidence, the jury being temporarily excused, the appellant renewed its motion that this evidence be stricken on the ground that both the complaint and the claim were insufficient to cover these injuries. The motion was again denied. Counsel then moved for a continuance on the ground of surprise. After argument the court reversed his former ruling, granted the motion to strike the evidence on the ground that the complaint was insufficient to admit it, and denied the motion for a continuance. The jury was recalled and the court gave the following oral instruction:

"Ladies and gentlemen: It becomes my duty under the allegations of this complaint to withdraw from your consideration any question of damages as to the irregular menstruation of the plaintiff or any injury to the ovaries. So in con-

sidering the amount of the damages, if you find for the plaintiff, you will omit any damages on those grounds, because the complaint claims no damages on those particular items. So it will not be necessary under that ruling for the defendant to put in evidence touching those particular items. Is that sufficient?

"Mr. Findley: 'Yes.' "

Counsel now urge that this was not sufficient, in that the court failed to mention the uterus. It was the clear intention of the court to withdraw from the jury's consideration all evidence of injury to genital organs. The jurors could hardly have failed to so understand. If counsel was not satisfied on this point he should have indicated the omission when appealed to by the court. He did not do so, but assented to the court's instruction. Nor do we find any merit in the claim of fatal error in that the court did not cover the withdrawal of this evidence in the final written instructions. It is sufficient to say that no such instruction was requested. Moreover, the only possible prejudicial effect of this evidence, had it not been stricken, was its tendency to augment the damages. It is not claimed, and in view of the other injuries clearly established by the evidence it could not be claimed, that the verdict was excessive.

(b) A witness was permitted to testify that, on the night of December 16, 1913, about eight months after the accident in which the respondent was injured, he was driving an auto truck along Crockett street and, when he was approaching the place of the accident, the gulch or ravine looked like a block of unpaved street; that he drove off of the paved street and onto what he supposed was the dirt street and did not perceive his mistake until the front end of the machine went down, throwing the rays of his auto lights onto the bottom of the ravine. The appellant contends that this was fatal error because of the lapse of time and the changed conditions. The purpose of this evidence was to show the dangerous and deceptive condition of the street. Obviously the mere lapse of eight months between the two accidents would be no valid

reason for excluding this evidence if the conditions were not materially changed. A careful consideration of all of the evidence as to the comparative conditions convinces us that there was no material difference. The measurements of the width and depth of the gulch at the time of the accident and at the time of the trial were practically the same. There may have been a slight change in the lighting of the street, though this is not clear from the evidence, but the appellant admits in its brief that the absence, on the night of the last accident, of the light suspended from the telegraph pole, which was there at the time of the respondent's injury, was more favorable to a discovery of the gulch by an approaching driver than was its presence. The headlights on the two machines illuminated the roadway for about the same distance. The evidence indicates that both nights were dark. While the truck driver testified that, at the time of his accident, "it was just drizzling rain a little," we do not consider that circumstance sufficient ground for excluding evidence which was otherwise clearly admissible as descriptive of the condition of the street itself. *Smith v. Seattle*, 33 Wash. 481, 74 Pac. 674; *Blair v. Seattle Elec. Co.*, 67 Wash. 465, 122 Pac. 358, Ann. Cas. 1913 D. 529; *Elster v. Seattle*, 18 Wash. 304, 51 Pac. 394. As said in *District of Columbia v. Armes*, 107 U. S. 519, cited and quoted with approval in *Smith v. Seattle, supra:*

"Persons are not wont to seek such places, and do not willingly fall into them. Here the character of the place was one of the subjects of inquiry to which attention was called by the nature of the action and pleadings, and the defendant should have been prepared to show its real character in the face of any proof bearing on that subject."

(c) A pedestrian also testified that to one approaching the ravine along Crockett street in the nighttime it had the appearance of a continuous street. The objection now urged, that this testimony was inadmissible because the time of his

observations was not fixed, is unavailing. So far as the record shows, no such objection was made in the court below.

IV. We shall not discuss in detail the instructions given by the court. We have read them with care and find that they clearly and correctly state the law applicable to the evidence. The appellant's criticisms are directed to isolated parts of the instructions which, if they stood alone, might be objectionable, but taken in context they are not. Nor shall we consume space by a detailed discussion of the instructions requested and refused. In so far as they would have been proper, they are fully covered by the instructions given.

We are convinced that the case was fairly tried and properly submitted to the jury. We find nothing in the record to warrant a reversal. The judgment is affirmed.

MORRIS, C. J., MAIN, FULLERTON, and CROW, JJ., concur.