## CITY OF UVALDE v. STOVALL.*
### (No. 7456.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 16, 1925. Rehearing Denied Jan. 20, 1926.)

**1. Municipal corporations ☞755(2)—City with power to control streets liable for injuries from defects.**

In view of power, under Rev. St. 1911, arts. 854, 1049, to control streets, city incorporated under articles 1033–1069 is liable for injuries from defective streets.

**2. Dedication ☞1, 31—"Dedication" defined; dedication of street must be expressly or impliedly accepted by local authorities or by public user.**

"Dedication" of a street is setting apart land for public use for a passageway for men and vehicles in a city, town, or village, and must be accepted expressly or impliedly by local authorities or by public user.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dedication.]

**3. Dedication ☞1 — Statutory dedication of street controlled by statute, and common-law dedication by estoppel.**

Statutory dedication of street (Rev. St. 1911, arts. 1004, 1005) is controlled by terms of statute, and operates by way of a grant, while common-law dedication operates by way of estoppel in pais.

**4. Municipal corporations ☞819(5)—Evidence held to show recognition and user of street causing injury.**

Evidence held to show that street in which was excavation causing injury to plaintiff was recognized by defendant city, and used as a street by the general public for years.

**5. Municipal corporations ☞796—City making excavations in street without giving warning held liable for injuries to night travelers.**

A city guilty of positive acts of negligence in making large excavations in street open for use, and used by public, and neither giving warning of dangerous condition of street, nor fencing it off, is liable for resulting injuries to persons using it at night.

**6. Negligence ☞111(3)—Allegation negligence was proximate cause of injury unnecessary, when shown by facts pleaded.**

Where facts pleaded in petition showed that defendant city's negligence in connection with excavation in street was proximate cause of injuries, it was not necessary to allege such fact.

**7. Negligence ☞93(1) — Automobile driver's negligence not imputable to guest.**

It is not duty of one occupying automobile as guest of driver to give him instructions or keep a lookout, and his negligence cannot be imputed to such guest.

**8. Damages ☞132(1) — $3,000 for broken shoulder and ribs, etc., resulting, in permanent injuries, held not excessive.**

Award of $3,000 to school teacher under 20, who suffered broken shoulder and ribs, bruised neck, bruised and skinned leg, and terrible pain in side, rendering her unconscious for 8 days, and resulting in permanent injury to shoulder blade, great loss of weight, atrophy of muscles beneath scapula, and impaired eyesight, *held* not excessive.

**9. Appeal and error ☞742(1)—Propositions not followed by statement overruled.**

Propositions not followed by any statement will be overruled; a reference to the transcript for bills of exception, from which to extract facts, not being sufficient.

Appeal from District Court, Uvalde County; R. H. Burney, Judge.

Action by Lula Stovall against the City of Uvalde. Judgment for plaintiff, and defendant appeals. Affirmed.

Martin & Martin, Will Glover, T. M. Milam, G. B. Fenley, G. B. Fenley, Jr., D. H. Jones, Black & Martin, and Atlas Jones, all of Uvalde, for appellant.

A. V. Wright and Will A. Morriss, both of San Antonio, for appellee.

FLY, C. J. Appellee instituted this action against appellant to recover damages resulting from being injured when an automobile in which she was riding ran into an excavation in the center of a street in said city, which excavation was eight or more feet in depth and which had existed in the street for more than 6 months. The cause was submitted to a jury on special issues, and upon the answer of the jury judgment was rendered in favor of appellee for $3,000.

The evidence sustains the responses of the jury, as will appear from a statement of the facts hereinafter made.

The first eight propositions present in effect one and the same proposition of law, and that is as summed up in the fifth proposition:

"Since the statutes, under which appellant was incorporated as a municipal corporation, conferred only governmental authority over its streets, and by their very terms exclude any corporate rights, powers, or privileges in and over such streets, appellant was not liable for the negligent construction and maintenance of its streets, as pleaded by appellee, and it was error not to sustain appellant's general demurrer to the petition herein."

In other words, the contention is that a city chartered under the general statutes cannot be held liable for damages resulting from defective streets, and especially is this true where its powers and privileges are limited.

[1] By the act of the Legislature every municipal corporation was made liable for the negligent death of a person to those who could sustain an action for such damages

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 10, 1926.

against a private corporation. Trevino v. City of San Antonio (Tex. Civ. App.) 269 S. W. 1067. It became necessary to specifically provide for the liability of persons and corporations for damages resulting from the death by negligence of any person, because such suits were not recognized under the common law, but actions for damages arising from personal injuries by reason of defective streets have been recognized in most of the states as under the common law. Dillon, Mun. Corp. §§ 1689, 1690. Appellant was incorporated under the terms of chapter 14, title 22, of the Revised Statutes of Texas of 1911, and in that chapter, article 1049, it is provided that—

"The board of aldermen shall have and exercise exclusive control over the streets, alleys and other public places within the corporate limits."

Again in article 854, Rev. Stats., exclusive control and power over the streets, alleys, and public grounds and highways is given to any incorporated city or town. By reason of the grant of these powers liability for injuries from defective streets are chargeable against municipal corporations. City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517; Green v. City of Amarillo (Tex. Civ. App.) 244 S. W. 241. The rules announced in cases cited apply with equal force to cities or towns incorporated under the general laws of the state. Baugus v. City of Atlanta, 74 Tex. 629, 12 S. W. 750. The propositions from 1 to 8, inclusive, are overruled.

[2, 3] The propositions from the ninth to the eighteenth, inclusive, are based on the claim that the evidence raised the question as to whether the road or highway had ever in any way been dedicated as a street, and that such question should have been submitted to the determination of the jury. It is the contention of appellant that the highway in which the excavation was situated had never been accepted or designated by appellant as a street, and had never been used by the general public in such a manner as to legally constitute it a street. Dedication of a street is setting apart land for the public use for a passageway for men and vehicles in a city, town, or village, and such dedication must in some way be accepted by the local authorities or by public user. No formality is required in the act of acceptance which may be express or implied. There are two kinds of dedication, statutory and common-law, the former being controlled by the terms of a statute, the latter by estoppel. It is said the statutory dedication operates by way of a grant; the common-law dedication by way of estoppel in pais. Elliott, Roads and Streets, c. V, § 122 et seq. We have a statutory method in Texas of condemning land and dedicating it to street purposes. Articles 1004, 1005, Rev. Stats. 1911.

[4] We find that appellant is a municipal corporation organized and chartered under the provisions of the general statutes of Texas; that it had and exercised, under the law, exclusive control over the streets, alleys, and other public places within its corporate limits; that Mesquite street was within such corporate limits, and the damage was inflicted on that street. There was an excavation across the street made by the city, and an automobile in which appellee was riding ran into such excavation at night, turned over, and injured appellee. The latter had no control over the automobile, but was riding in the same as a guest. She had no knowledge of the condition of the street. There was evidence tending to show that the street was used as a passageway by the public, and the accident occurred, not in the bed of the river, as contended by appellant, but at a point 75 or 100 feet distant from the river. As to the street being open and used by the public, W. F. Smith testified that he had lived on the block next to where the accident occurred for 17 years. It was the fourth street north of the street on which the courthouse is located. The street was named and known as Mesquite street. When the excavation was made in the street by the city a perpendicular bluff was made there. Smith swore: "The excavation was in a regularly used public street." The street extended down to the river, and wagons went down from the street to the river bed. Stoner Smith swore that the street was graded, and that he drove the car over the embankment without knowing it was there. The city engineer testified that the excavation was within the corporate limits; that it was about 75 feet from the creek or river. H. P. Hornsby swore that the street was open and used, before the excavation was made, down to the river.

The appellant had exercised authority over the street even by the act of digging gravel out of it and making the excavation. The street had been graded, and was shown upon the map. As said by Judge Elliott, Roads and Streets, § 171:

"It would be somewhat anomalous to have a street that all the people had a right to use, and have kept open, and which is used and kept open, and for the obstruction of which an indictment will lie, without any responsibility on the part of the public authorities, and without any action on their part to protect themselves, or prevent it from being one of the ordinary streets of the city, as in fact it appears to be."

[5] The evidence satisfactorily established that Mesquite street was a street recognized by appellant; that it was used as a street by the general public, and had been for years. Appellant not only failed to keep the street in good condition, but was guilty of positive acts of negligence in making large excavations in the street, and in giving no warning to any one of the dangerous condition of the street. Even in the few states where munic-

ipal corporations are held not liable for failure to repair their streets, they are held liable for positive acts of negligence by reason of which the streets are rendered unsafe. Elliott, Roads and Streets, § 789; Dillon, Mun. Corp. § 1024; Collier v. Fort Smith, 73 Ark. 447, 84 S. W. 480, 68 L. R. A. 237.

The city knew the street was in use, knew of the dangerous excavation, because it had made the excavation itself, and it was its duty to guard against accidents by giving warning of the danger or by fencing off the street. It exercised no care whatever to protect those who might use Mesquite street at night. McQuillin, Mun. Corp. § 2795. Practically the whole of the testimony showed that the street was open for use and was used by the public.

[6] The nineteenth and twentieth propositions are overruled. The petition is not open to attacks made upon it, but it clearly alleged a case of negligence upon the part of appellant. The facts pleaded showed that the negligence of appellant in connection with the excavation was the proximate cause of the injuries received by appellee, and it was not necessary to state that such negligence was the proximate cause. The facts led irresistibly to that conclusion.

[7] The twenty-first proposition complains that the court would not submit the issue, "Was Stoner Smith or any one of the other persons riding in the automobile with him keeping proper lookout as to where they were driving?" The court correctly refused to submit such issue, because it placed upon appellee, an occupant of the car on the rear seat, the duty of keeping a lookout for Stoner Smith, who was driving the car. She was his guest, and the duty did not devolve upon her of giving instructions for driving from the rear seat. She had no control whatever over the car, and was not responsible for the manner in which it was driven. Being a guest, she was not required to assume the obnoxious role of a "back seat" driver. The negligence of the driver could not be imputed to her, and she was under no obligation to keep a lookout. Railway v. Kutac, 72 Tex. 643, 11 S. W. 127. As said by the Court of Civil Appeals of the Second District of Texas, in Railway v. Johnson, 224 S. W. 281:

"It is well settled that the negligence of the driver of a private vehicle is not ordinarily chargeable to other occupants of the vehicle who are riding at the invitation or with the consent of the driver."

This proposition is upheld in all authorities on the subject. Lyon v. Phillips (Tex. Civ. App.) 196 S. W. 995; Weidlich v. Railroad, 93 Conn. 438, 106 A. 323; Rogers v. Railway, 67 Or. 244, 134 P. 9. The twenty-second proposition raises the same question as that in the twenty-first, and both are overruled.

The evidence did not justify the issue presented in the twenty-third proposition. No evidence tended to show contributory negligence upon the part of appellee. Beach v. Seattle, 85 Wash. 379, 148 P. 39; Clark v. Public Service Co., 83 N. J. Law, 319, 85 A. 189. The twenty-fourth and twenty-fifth propositions advocate the same theory as the twenty-third, and all are overruled. There was no evidence whatever of contributory negligence. The driver of the car had the right to go upon the street and drive his car along it, and the evidence fails to show that he was guilty of any negligence, and, if he had been, that would not have been imputed to appellee, an innocent guest in the car.

[8] The evidence showed that the accident to the car was of such proportions as to kill her girl companion, who was on the front seat. Appellee was under 20 years of age, a school teacher, and her shoulder was broken, her neck was bruised, and her leg bruised and skinned from her foot to her knee, and she suffered from a terrible pain in her side. She was unconscious for 8 days after the accident. Dr. Edds, an experienced physician, saw appellee, and began treatment of her about 8 or 10 days after she was hurt. He testified that one of the shoulder blades or scapulas was torn loose from the body "until you could almost get your hand in. It was thrown out of place. Two ribs were broken loose from her backbone." Appellee was under the care of Dr. Edds one month or so. The injury to the shoulder blade was permanent. She became very thin, and her shoulders are quite different. She suffered up to the time of the trial with pains in her back and shoulder. There is atrophy of the muscles underneath the scapula, and her eyesight is affected. She has suffered great pain, and lost over 12 pounds of flesh. There was no evidence of bias or prejudice. The twenty-sixth and twenty-seventh propositions, complaining of excess in the verdict, are overruled.

[9] The remaining propositions from the twenty-eighth to the thirty-second, inclusive, are not followed by any statement, and are overruled. A reference to the transcript for bills of exceptions from which to extract facts is not sufficient.

The judgment is affirmed.