ROBERT L. BLAND. Judge.
dissenting.
Upon the rehearing of these claims I again find myself to be at variance with my colleagues. The opinion of the majority members of the court leaves undisturbed the far-reaching rule laid down in the original majority opinion, namely:
“When the state read commission by the act of 1933 assumed control and authority over the primary and secondary roads of the state, the duty was imposed cn it to guard all dangerous places on the public roads and bridges by suitable railings or barriers, so as to render the said roads and bridges reasonably safe f:r travel thereon by day or by night.”
I cannot subscribe to that proposition. I know of no statute in West Virginia that imposes such duty upon the state road commisslcr.. The state road commission is a legislative corporation established as a part of the government of the state. It is. indeed, one of the principal governmental agencies of the state. If such a duty as the majority members maintain exists upon the part of the road commission it would necessarily follow that there should be some remedy to enforce the performance of such duty. No action for actual defects in highways could be maintained at common law except as given by statute.
We must at all times bear in mind that section 35 of article VI of the constitution of West Virginia declares:
“The state of West Virginia shall never be made defendant in any court of lav,' or equity.”
The Legislature may impose upon the state liability for the acts of its agents if it is not. prohibited by the constitution from doing so. 26 R. C. L. 66.
*157 In 25 Ruling Case Law, at section 50, page 413, we read:
“The immunity of a state from suit is absolute and unqualified, and the constitutional provision securing it is not to be construed as to place the state within the reach of the process of the court.”
In Kinnare, Admr. v. The City of Chicago, et al., 171 Ill 332, at p. 335, it is observed:
“The State acts in its sovereign capacity and does not submit its action to the jurisdiction of courts and is not liable for the torts of or negligence of its agents, . .
Mr. Justic Miller, in the case of Gibbons v. United States, 8 Wall 269, at p. 274, says:
“No government has ever held itself liable to individuals for the misfeasance, laches or unauthorized exercise of power by its officers and agents.”
And. Judge Story says, in his work on Agency, section 319:
“. . . the government . . . does not undertake to guarantee to any persons the fidelity of any of the officers or agents whom it employs; since that would involve it, in all its operations, in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests; . .
It has been declared that the state government cannot be made amenable to judicial process, except by her own consent.
In maintaining the road on which the deaths occurred the state road commission is acting within its governmental powers and engaged in the exercise of a governmental function.
The attorney general argues that the original majority opinion is not supported by the law, but is out of line with public policy and the law in the state of West Virginia. He maintains that it has never seriously been contended in West Vir *158 ginia, previously, that the state road commission has a duty to place barriers or guardrails alongside the paved portion of our highways located, as they are, in hilly or mountainous terrain and containing literally hundreds of sharp and winding curves. He further contends that there is no liability of the nature sought to be enforced in this proceeding against the state road commission, and that the court of claims is not authorized to make an award founded on claims such as are sought to be enforced in these cases. I think, therefore, that his very able brief is entitled to be seriously considered. He cites code, 14-2-1, as amended by chapter 20, acts of the Legislature of 1941, which section reads:
“The purpose of this article is to provide a simple and expeditious method for the consideration of claims against the state that because of the provisions of section thirty-five, article six of the constitution of the state, and of statutory restrictions, inhibitions or limitations, cannot be determined in a court of law or equity; and to provide for proceedings in which the state has a special interest.”
He calls our attention to section 12 of said article 2, relating to the general powers of the court, the first sentence of which is a repetition or restatement of the declared purpose for the creation of the court, reading as follows:
“The court shall, in accordance with this article, consider claims which, but for the constitutional immunity of the state from suit, or of some statutory restrictions, inhibitions or limitations, could be maintained in the regular courts of the state.” (Italics supplied.)
I have been inclined for some time to think that where no liability exists upon which the state could be sued at law or in equity, if it were suable, the court of claims has no jurisdiction to make an award. This is the holding of the Illinois court of claims. The statute creating the court of claims of Illinois and the statute creating the court of claims of West Virginia are very similar.
*159 No action on behalf of the claimants in these cases could be maintained against the state in its regular courts in view of the constitutional immunity of the state from suit and the state’s inherent exemption from liability as a sovereign commonwealth. The state is not liable for accidents occurring on its highways. There is no duty imposed by statute on the road commission to guard all dangerous places on the public roads and bridges by suitable railings or barriers. In Mahone v. State Road Commission, 99 W. Va. 397, it is held:
“The State Road Commission of West Virginia is a direct governmental agency of the State, and as such is not subject to an action for tort.”
And in the opinion in Clayton v. County Court, 96 W. Va. 333, it is said:
“. . . The liability of the county court was purely statutory, created by the statute, and otherwise would not exist. At common law the county courts would not have been liable. Parsons v. County Court, 92 W. Va. 495. . . .”
There is, according to my view, no legal or equitable obligation of the state to pay the claims for which thesé awards have been made.
Chapter 20 of the acts of ihe Legislature of 1941, creating the court of claims, was introduced in and passed by the Legislature as,
“AN ACT to amend article two, chapter fourteen of the code of West Virginia, one thousand nine hundred thirty-one as amended, by repealing . . . section three, article three, chapter twelve, thereof, all relating to claims and proceedings against the state, its officers and agencies.”
In 59 Corpus Juris, page 282, under the title of “Claims against State,” it is said:
*160 “A claim against the state is a demand by some one other than the state, against it for money or property.”
Corpus Juris further says:
“ ‘A legal claim’ against the state is one recognized or authorized by the law of the state, or which might be enforced' at law if the state were a private corporation.
“Within the meaning of statutory or constitutional provisions relating to their presentation and allowances,”
continues this excellent authority,
“the term ‘claims against the state’ refers to ‘a legal claim’, a claim as of right, and generally it is further limited to claims arising out of contract, where the relation of debtor and creditor exists.”
I do not think that the awards are based upon claims which the state as a sovereign commonwealth should discharge and pay. It was never within the contemplation of the Legislature, in creating the court of claims and giving it jurisdiction to consider claims ex contractu and ex delicto; to make the state liable in damages for accidents occurring upon mountainous highways on which guardrails and barriers had not been erected. The court act authorizes us to consider actions ex contractu and ex delicto, but imposes no liability against the state where none would exist independently of the act. At most this act provides a remedy for the consideration of actions recognized at common law or against the sovereign or created by statute. It creates no cause of action. It provides a remedy for existing causes but imposes no new liability. It does not waive any defense.
In Wessels v. Stevens County, 110 Wash. 196; 188 Pac. 490, cited by the attorney general, the Supreme Court of the state of Washington held:
*161 “A county was not negligent in not maintaining a warning sign or barrier at a 100 degree curve in a 14-foot highway below which was a deep canon, the curve not presenting any extraordinary condition or unusual hazard; there being hundreds of just such curves upon the highways of the state.”
I quote as follows from the opinion in that case:
“The accident, which caused the death of the deceased, occurred on what is known as the hill road between Spokane and Colville. It was a good gravel road, and one of the principal thoroughfares between these two cities. On the evening of January 5, 1918, the deceased was traveling over the highway in an automobile driven by one Loyal Clark. At the point where the accident occurred the road makes a sharp or abrupt curve around the brow of the hill. Below the road at this point is a valley or canon several hundred feet wide. The decline to the valley below is precipitous. The turn is described1 as a 100 degree curve. The roadway at this point was approximately 14 feet wide. The accident occurred about 6 o’clock in. the evening; it being then dark. The deceased was riding in the front seat with the driver of the car. As the automobile was rounding the curve it passed outside of the outer beaten track to the brink of the decline and rolled down the hill. The deceased went down the hill with the car, and sustained the injuries from which he died a few days later. The lights on the automobile were good, and focused upon the road about 40 feet in front of the car. It was traveling 8 or 10 miles pér hour at the time and could be stopped at that speed within its length. The road approaching the brow of the hill, over which the automobile passed just prior to the accident, was practically level and straight.
“[1] The negligence alleged was the failure to have any warning sign or barrier at the curve. It is the admitted rule that a county is reauired to keep its highways in a reasonably safe condition for ordinary travel. The evidence shows that a large number of automobiles passed over this road every week. There is no map or drawing in the record showing the exact situation, but there are a number of pho *162 tographs, by which, taken in connection with the testimony, the condition of the road and the curve are made reasonably apparent. One of these photographs, referred1 to as ‘Exhibit 5,’ shows the highway at the curve, the point of the hill on the upper side, and a man standing at the brink of the decline looking over the valley. The evidence shows that the point where the man is standing is where the automobile went over. At this point the distance between the outside traveled track of the roadway and the place where the man is standing is a number of feet. The appellant admits that if this were a hillside road, there would be no cause of action.
“[2] Whether the county was negligent in not maintaining a warning sign or barrier depends upon whether the road at the curve presented an extraordinary condition or unusual hazard. There are probably hundreds of just such curves upon the highways of this state, and if it were held that the county failed in the performance of its duty by not having a warning sign or barrier here, the same would be true of every other similar situation.
“In Leber v. King County, 69 Wash. 134, 124 Pac. 397, 42 L. R. A. (N. S.) 267, it is said:
“ ‘Here we have a road graded and in repair, 15 feet wide, which is wide enough for all ordinary travel unless it be in the populous centers of the state. We think it will require no argument to make plain the fact that here there was no extraordinary condition or unusual hazard of the road. A similar condition is to be found upon practically every mile of hill road in the state. The same hazard may be encountered a thousand times in every county of the state. Roads must be built and traveled, and to hold that the public cannot open their highways until they are prepared to fence their roads with barriers strong enough to hold a team and wagon when coming in violent contact with them, the condition being the ordinary condition of the country, would be to put a burden upon the public that it could not bear. It would prohibit the building of new roads and tend to the financial ruin of the counties undertaking to maintain the old ones. The unusual danger noticed by the books *163 is a danger in the highway itself. It may become a question for the jury. Such was the condition in the Neel case. [Neel v. King County, 53 Wash. 490, 102 Pac. 390.]
“It is true the accident in that case happened upon a hillside road, hut the principle is applicable to the present case, because there was no unusual danger or extraordinary hazard at this curve as compared with other similar curves. The case of Beach v. Seattle, 85 Wash. 379, 148 Pac. 39 is not controlling. There the accident happened in a thickly populated city, at the end of a paved street, which was crossed by a gulch. The automobile went down the street and into the gulch. The incandescent light on a pole nearby tended to obscure the gulch and give it the appearance of the continuation of the street in an unpaved condition.”
Because I believe that the adherence of the majority members upon rehearing to the rule announced in the syllabus of the original majority opinion to be wrong, and am of opinion that it is an incorrect statement of the lav.’ ar.d that such holding is contrary to public policy. I now respectfully record this dissent.